Tilghman C. J.
(After stating the case.) Two objections were made to the admission of these papers. First, that the land for which this ejectment was brought was conveyed to Josiah Haines, the testator, by his sister Catherine, and brother Casper W. Haines, after the making of his will, and therefore was not subject to any disposition or devise in his will. Second, that the appointment of four persons to value the estate of Haines, made by the three executors, who administered, and all acts done in consequence of it, were void, the power of appointment being given to all six of the executors.
As to the first objection, supposing the law to be as contended for by the defendants, that is to say, that the lands purchased after the making of a will cannot pass by a devise in the will, yet it would not prevent the papers objected to from being given in evidence, because Josiah Haines, the testator, was entitled to one-third of the land conveyed to him by his brother and sister before their conveyance to him. Consequently, he hacl an interest in that land, on which his will might operate.
With regard to the second objection. It is true, that the power of appointment is given to the six executors, and it is very doubtful, to say the least of it, whether it .did not require the whole six to make a good appointment: especially as it was not proved that any of them had renounced. But without giving a decided opinion as to that, for which I do not think there is occasion, let us suppose that a perfect appointment could not be made by the three who did make it; would the act be so absolutely void that it could not be given in evidence ? In order to determine that, ,we must consider the situation of the estate and the family of Josiah Haines. The family consisted of the widow and one child, a son. The widow was entitled to one-jourth of the estate absolutely, and another fourth for life; and she had a right to appoint two of the six persons who were to make the valuation of the *388 estate. She did make this appointment, and the valuation having been made, all other acts were done, with her concurrencej which were necessary to complete the partition of the estate. Suppose now, that the son, on arriving at age, should be satisfied with this partition, and confirm it? Could his mother avoid it? I apprehend'not. Having consented to a valuation, in the manner which has been mentioned, it would not lie in her mouth to gainsay it. It would resemble the case of a contract made by an infant, which, when he came to age, he might ratify or avoid at his pleasure: but the other party would be bound. What then would be the case when this ejectment was brought, the son of Josiah Haines being still an infant? Was it in the power of Mrs. Young, at that time, to avoid the partition? It was not. Plow then cán it be said to be void. Besides, who is it that wishes to avoid it? Not the son, the only person who could be injured by it, but a stranger, whose claim was adverse to the family. What right has he to interfere ? Perhaps the partition may be favourable to the son, and he may wish to confirm it. It would be singular if we should decide it to be void, and it should hereafter be made good by the consent of the son. It is much more rational to consider it as binding, during the infancy of the son. No person, who has a right to object, makes any objection. , I say nothing of the authority sometimes exercised by Chancery in aiding the defective execution of powers: because I do not think there is any necessity to resort to that ■consideration. Taking the case up on the principles of the common law, it appears to me that it was a partition, not void, but voidable, by the infant, when he came to age. Consequently the deed of appointment, and the other papers connected with it, were legal evidence.
There remains to be considered a bill of exceptions taken on the rejection of part of the deposition of William P. Brady. The counsel for the plaintiff in error contend, that the whole deposition was evidence, in consequence of the consent of the parties at the time it was taken. It is true, that the parties did consent. But long practice has fixed a construction upon this consent: that is to say, unless the contrary is expressed, the deposition and every part remain liable to the same exceptions that the evidence would have been liable to if the witness had been produced in Court. The parts of the deposition rejected by the Court below related to an- old *389 draft, said to be made by William Scull of a tract of land purchased by Brady, the witness, and Thomas Grant, of Edward' Shippen: of a conversation between Grant and Brady on the subject of that draft,andan account of the running of some of the lines described in the draft. The draft itself was not produced, and therefore nothing which related to it could be evidence. Upon production it might have appeared to be a survey without authority. The evidence therefore was properly rejected.
Annexed to the record in this case is a long opinion of the President of the Court of Common Pleas, assigning his reasons for refusing a new trial, which had been moved for by the defendant. The counsel for the plaintiff in error have taken many exceptions to this opinion : but it is settled, that the granting or refusing of anew trial is not the subject of a writ of error. Consequently, the reasons for granting or refusing it, cannot be reversed by this Court.
I am of opinion, upon the whole, that the judgment should be affirmed,
Yeates J.
The case has been minutely stated by the Chief Justice. Our inquiries are restricted to the bills of exceptions sealed on the trial of this cause, as to the admission or rejection of the testimony offered. It is not our province to decide, whether justice has been done by the verdict. The evidence isnot spread on the record ;nor was the opinion of the Court below demanded thereon. The grounds on which the motion for the new trial was over-ruled, have been specially enumerated, and the Court of Common Pleas have exercised their discretion therein; but it is fully settled that in such a case we cannot interpose. 2 Binn. 80. 93.
It is not denied, that a will can have no operation on lands subsequently purchased by the testator, unless there has been a republication. Consequently the will of Josiah Haines of 12th August, 1794, could not effect a disposition of the lands, the title whereof was denied under the conveyance of 24th, March, 1795. But independently of this conveyance, the testator had an interest in these lands on which his will might operate, and therefore the evidence was legal and relevant. Josiah Haines was entitled to one equal undivided fourth part of all the lands whereof his father died seised under thje will of his father, and to one equal undivided third- *390 part of 'one-fourth of his brother ■ Reuben’s -share under his will: both of which preceded his own will. He, therefore, had a right to four-twelfth parts, or one-third part of all the residuary real estate of his father.
The plaintiffs in error 'nave contended, that the papers marked A and B, in the bill of exceptions, were inadmissible in- evidence, inasmuch as no legal title could be derived tinder them. They have urged, that the power of appointment of four persons to value and divide the estate of Josiah Haines, having been granted by his will to his six executors therein, it could not be executed by three of them, styling themselves his acting executors; and'therefore such appointment and valuation, and all the proceedings consequent thereon, were merely void. »
We know not, from the evidence, whether Israel Whelen, Benjamin R. Morgan, and Kearny Wharton, ever intermeddled with the execution of this will. We are informed by the papers read on the trial, that Caspar Wistar Haines, Josiah Matlack, and John Boyd, axe called the acting executors; and that to them, letters testamentary were granted. I cannot think that their appointment of four persons to value and divide the estate was ipso facto' void. It might certainly be made good by matter subsequent, and at most was voidable by John Haines, the only child of the testator,- when he came of age. Mrs. Toting was entitled to one equal fourth part of the real and personal estate of her former husband under his will, to be laid out to her in severalty. She had no mode known to our laws of compelling all the persons named as executors to join in the appointment. A Court of Chancery would have given her relief in such a case ; and if all the executors had renounced, would have raised up a trustee to prevent the destruction of the trust. Equity, moreover, would supply the defective execution of a power in favour of a purchaser for a valuable consideration. It will not be denied that Mrs. Toung was bound by what the executors and she and her second husband had done under the directions in the will, and that no one could-be injuriously affected thereby, except her infant son and heir, in case of inequality of allotment. Those' acts were binding on him during his infancy, and now, instead of expressing any dissatisfaction or dissent, upon his coming to full age, he fully assents thereto. I view the plaintiffs in error as entire strangers to all these different *391 proceedings, and hold them incompetent to take advantage of any irregularities therein. If there are solid, substantial defects. in the execution of the authority conferred on the executors, I am of opinion that the deed made by them to Ben~ jamin F. Young, and Sarah his wife, and the heirs of the said Sarah, can only be avoided by her son, and therefore the papers excepted to were properly admitted in evidence to the ■jury: and now, peculiarly so, when any seeming irregularities on the face of them might be cured by subsequent events.
One other exception remains to be considered: the overruling of part of the deposition of William P. Brady. The error here assigned is not pressed upon us so much on the ground that certain parts of it were correctly legal, as that the rejection of the supposed objectionable passages violated the agreement of the parties, made at the time of taking *the deposition. Strong expressions are certainly made use of that “the deposition, interrogatories, and all concerning it “were taken by the consent of parties.” But I consider this redundancy of language as nothing more than a consent to receive the deposition in evidence, according to its legal effect, in the same manner as if the witness had been personally present in Court, without requiring any preliminary proof of previous notice, or even of a rule of Court on which it was founded. Such agreements have often been so construed. Known rules of law, as-to the inco'mpetency of the witness, or the nature of his testimony, are not supposed to have been dispensed with or waved. This appears clearly to have been the idea of the contracting parties as to the effect of the agreement. Objections to different parts of the testimony of this witness have been raised by the counsel on each side, which the Court of Common Pleas have been called upon to decide, arid on their decision cross bills of exception have been sealed, at their instance respectively.
Upon the whole, I see no legal error on the face of this record, and therefore am of opinion that the judgment of the Court of Common Pleas be affirmed.
Brackenridge J. was sick and absent.
Judgment affirmed.