### LAW *vs.* MERRILLS.

Where a witness had testified to admissions made by a plaintiff, tending to shew that a note for the payment of money was *usurious*, but leaving the *time* of the corrupt agreement vague and indefinite, and where it was asked, after the cause was summed up by both parties and the jury charged by the court, that the witness should be recalled and re-examined on the allegation by the defendant that he *had testified* positively to the fact that the usurious agreement was made *at the time of the loan*, and the court refused to allow it, *it was held* that the decision was correct, and that for such cause a judgment will not be reversed.

It is not a proper exercise of discretion in a court, after the question has been submitted to a jury, and after it is seen that a *confession in a particular form* is necessary to make it conclusive evidence to defeat the action, to permit the witness to *remould* the confession into that form.

Evidence of confessions of a party should always be scrutinized and received with caution.

A judgment will not be reversed because the court omitted to charge the jury as to the legal inference arising from the testimony in the case ; to sustain a writ of error on the ground that the court neglected to charge the jury upon a question of law arising upon the facts, it must appear by the bill of exceptions, not only that the facts upon which the question arose existed, but also that the court was distinctly *requested to instruct the jury* as to the law on that point.

Nor will a judgment be reversed because from the record it appears that the jury have passed only upon the issue of *non-assumpsit*, when there is such plea and also a plea of *payment;* the finding of the jury upon the issue under the plea of *non-assumpsit*, necessarily negativing the plea of payment.

The judgment of a subordinate court will not be reversed for the refusal of the court to grant a new trial.

A mistake in the *placita* of a record of the C. P. as to the *place* where the court was held at the time the *capias* was returnable, is cured by the statute of jeofails.

A bill of exceptions must appear on its face to have been taken and signed *at the trial* of the cause ; if not in fact signed at the trial, but afterwards reduced to form, it must be signed *nunc pro tunc.*

ERROR from the supreme court. Law sued Merrills in the common pleas of Washington, and declared as the *bearer* of a promissory note for $125, bearing date 29th *June*, 1822, made by the defendant, and payable *ten days after date*, to Sally M. Jones or bearer. The defendant pleaded non-assumpsit and payment. The cause was tried in the common pleas in *March*, 1825. The note was proved, and on it appeared two endorsements of $10 each, one under date of 16th December, 1822, the other of 6th May, 1823. The note was transferred to the plaintiff in July, 1823. On the part of the defendant it was proved, by a witness of the name of *Wilson*, that in the summer of 1822 he heard Miss Jones say that she had let her money to the defendant, for which she received about double interest; she shewed the note to him, and said she had made a good bargain, was to have nearly double interest, and he understood 12 per cent.; he was present when the endorsement was made, in December, 1822. *White*, another witness for the defendant, testified that about a month before the note in question was given, Miss Jones loaned to the defendant $90. Before the loan was made, Miss Jones told him that the defendant was to give her twelve per cent., and she thought she ought to have fourteen per cent. ; he told her she had no right to take more than seven per cent. He counted out $90 to the defendant, and took his note for that amount. About a month afterwards, Miss Jones told him she had let the defendant have some more money, which, together with the $90 and the interest, amounted to $125, and had taken a new note for that sum, and the first note was taken up; that she was to have twelve per cent. on the last mentioned note, which was included therein. In December, 1822, or January, 1823, Miss Jones told him she had received $10 towards extra. interest, which he endorsed on the note. This witness testified that Miss Jones was his step-daughter, and that they were not on friendly terms. *Merrills*, another witness for defendant, testified that in December, 1822, or January thereafter, he saw the defendant pay Miss Jones $10 for extra. interest; and *Darby*, another witness for defendant, testified that in the winter of 1822 or 1823, Miss Jones told him that the defend-

ant owed her on a note, and had paid her $10 as extra. interest. *On the part of the plaintiff,* it was proved by a witness called by him, that after the commencement of the suit in the common pleas, he had a conversation with the defendant relative to the note, and the probability of defeating a recovery thereon on the ground of usury; that the defendant said that the note was given for the sum of money actually received, and no more; but that he could prove that Miss Jones had taken from him more than seven per cent. The cause was summed up by the counsel for the parties, and the jury were charged by the court that if *at the time* of the making of the loan, it was agreed between the parties that the defendant should pay more than seven per cent. interest, the defendant was entitled to their verdict; but if they believed from the testimony that the note was given for the amount of money advanced, and nothing more, and the agreement to pay extra. interest, as mentioned by the witness, was made subsequently and with a view of obtaining further indulgence, such agreement would not affect the validity of the note, and the plaintiff was entitled to their verdict. The judge who charged the jury recapitulated the testimony and submitted the cause to the jury. Immediately after the judge had charged the jury, the counsel for the defendant stated that the court had *misunderstood* the testimony of the witness Wilson, and insisted that he had testified that Miss Jones, in the conversation testified to by him, had stated that it was expressly agreed between her and the defendant, *at the time the money was loaned* and the note in question was given, that he should give her twelve per cent. interest for the use of the money, and insisted on having him called and examined as to *whether he had so testified or not.* The plaintiff's counsel objected, and the court decided that it was a matter of discretion, after a cause had been submitted by the court to a jury, whether or not to permit a witness to be interrogated as to any part of his testimony; that in the present case it appeared to them improper to extend that indulgence, and they refused to permit Wilson to be called. The defendant's counsel excepted to the opinion of the court, and the jury found a verdict for the plaintiff. A case was made, with leave to either party

ALBANY,
Dec. 1830.

Law
v.
Merrills.

to turn the same into a bill of exceptions. A motion was made to the C. P. for a new trial on the case made; on the argument of which an affidavit of the witness *Wilson* was produced, stating that he had testified, on the trial of the cause, as was alledged by the defendant's counsel. In *August*, 1826, the C. P. refused to grant a new trial, and gave judgment for the plaintiff; the defeudant excepted to the decision of the court in refusing a new trial, and the court sealed a bill of exceptions as of the date of *August*, 1826.

The defendant sued out a writ of error to the supreme court, where the judgment of the C. P. was reversed and a *venire de novo* awarded; see 9 *Cowen*, 65; whereupon the plaintiff removed the record into this court. The *placita* of the record in the C. P. is of March term, 1824, and states the court to have been holden in that term at *Kingsbury*, whereas the C. P. in that term was held in *Salem*, there being two shire towns in the county of Washington. It also appears, from the entry on the record, that the jury passed only on the issue of non-assumpsit, and it does not appear that they passed on the issue joined on the plea of payment.

The cause here was argued by.

*D. Russell*, for the plaintiff in error.

*S. Stevens*, for the defendant in error.

The following opinions were delivered :

By the CHANCELLOR. On the argument in this court it was insisted by the counsel for the defendant in error, that the record of judgment in the common pleas is fatally defective, and that for that cause, if no other, the judgment of the supreme court ought to be affirmed. The first exception taken to the record is an error in the *caption*. The process against the defendant was returned served at the March term of the common pleas, which was by law to be held at *Salem*. The statute requires the caption of the record to correspond with the place and time when and where the process was returnable, and returned served. 2 *R. L.* 148. The caption states the court to have been

holden at *Kingsbury* instead of *Salem.* This at most is noth-
ing but a miscontinuance or irregularity, and is cured by the
statute of jeofails, as it appears by the record that both par-
ties appeared at the next term of the court, which was hold-
en at the proper time and place, and joined issue in the
cause, and afterwards went to trial on the merits. *2 Wheat.
Rep.* 226.

The next error relied upon in the record is, that the ver-
dict is entered on the plea of the general issue only, and that
judgment was given against the defendant, although his
*plea of payment* remained undecided. The case of *Bemus* v.
*Beekman,* 3 *Wend. R.* 667, is decisive in favor of this ob-
jection, unless the finding of the jury on the other issue ne-
cessarily negatives the plea of payment, and thus in effect
decides the issue joined on that plea. The principle on which
the case of *Thompson* v. *Button,* 14 *Johns. R.* 84, was decided,
although incorrectly applied to the facts in that case, is pe-
culiarly applicable to the cause now under consideration.
There the plea of *non cepit* did not involve the question
whether the goods replevied belonged to the plaintiff or
were the property of a stranger, as charged in the avowry.
The jury in such a case might have decided the first issue in
favor of the plaintiff, and the second in favor of the defend-
ant, and there would have been no inconsistency in the ver-
dict. The same difficulty existed in the case of *Bemus* v.
*Beekman.* In *Hodges* v. *Raymond,* 9 *Mass. Rep.* 316, there
were not separate pleas to the whole cause of action. The
issue to be tried was in substance whether, as to the force,
the defendant was or was not guilty, and as to the trespass,
whether he was or was not guilty without any such excuse as
he alleged. The jury found a general verdict of not guilty
in favor of the defendant; and the court held this a sufficient
finding in his favor on the whole issue. It will be seen in
that case that the jury must have found against the defend-
ant, on the mere formal issue as to force and arms, unless
they were satisfied with the truth of the matters set up as
a justification of the alleged trespass. Their general verdict
therefore necessarily involved the whole question to be deci-
ded between the parties. The case of *Hawkes* v. *Crofton,* 2

*Burr. R.* 698, was another of the same description ; in which the verdict, although informal, was decided to be sufficiently certain and decisive as to the whole issue. The court has no power to supply substantial omissions in a verdict ; but if the jury have expressed their meaning in an informal manner only, yet with sufficient certainty, to show that they must have passed upon and decided the whole issue, it is the duty of the court to mould it into form. In the case before us it would have been impossible to obtain a verdict in favor of the plaintiff on the general issue, if the defendant had established his plea of payment. On the last plea the defendant held the affirmative, and payment can be given in evidence under the general issue as well as under the special plea. Whatever would have entitled the defendant to a verdict under the latter, must necessarily have entitled him to a verdict under the former. This, therefore, though not in form, was in substance a verdict for the plaintiff on both issues, and the defective finding of the jury afforded no sufficient ground for reversing the judgment of the common pleas. Again ; the bill of exceptions was brought into the supreme court and made part of the record there before the assignment of errors, and from that it appears that the jury did in fact find a general verdict for the plaintiff. I presume, if the objection had been made there, the supreme court would not have considered it any ground for reversing the judgment.

It becomes necessary, therefore, to examine the several questions raised by the bill of exceptions.

I am inclined to concur with the chief justice in the view he has taken of the merits of the case before the court of common pleas ; but it is evident the attention of the justices of the supreme court was not drawn to the fact that the questions of law which might have been raised for the consideration of that court were not presented in a form which could authorize a reversal of the judgment on a writ of error. The defence in the court below was usury, and it is very probable that the strong feeling which always exists against such a defence, together with the fact that it was set up to defeat a recovery on a note given to a young female, may have in-

duced the jury to find a verdict for the plaintiff, when they should have found in favor of the defendant. But if no principle of law was violated by the court of common pleas on the trial, neither the supreme court nor this court have any power to reverse their judgment on a writ of error.

The objection, first in order in point of time, is the one stated in the closing paragraph of the opinion of the chief justice. It is that the court should have charged the jury that the legal inference to be drawn from the testimony was, that the bargain spoken of by the witness Wilson was the original contract for the loan. If this had been an application for a new trial, on a case made at the circuit, or in the same court, containing these facts, the court in which such application was made might probably in the exercise of a sound discretion have granted a new trial on the ground that the judge had not called the attention of the jury to some material facts in the case; or that they had been left to draw an inference not warranted by the testimony. *Gibbs* v. *Phillips,* 2 *Mann. & Ry. Rep.* 238. *Rich* v. *Penfield,* 1 *Wend. R.* 380. *Harris* v. *Wilson,* 1 *id.* 511. But in this case the court was not asked to charge the jury as to the legal inference arising from the testimony. Neither does it appear that any exception whatever was taken to the charge of the court. It is well settled that to sustain a writ of error on the ground that the court neglected to charge the jury upon any question of law which arose out of the facts of the case, it must appear upon the bill of exceptions not only that the facts upon which such question of law arose were in evidence in the cause, but also that the court was distinctly called upon to instruct the jury as to the law on that point, *Per Marshall, C. J.,* 6 *Cranch,* 233, *note; Per Abbot, C. J.* 7 *Dow. & Ry.* 3; *Per Tilghman, C. J.,* 7 *Serg. & Rawle,* 102; *Per Pendleton, Pres.,* 1 *Gall.* 115; *and per Story, J.* 2 *Peters' Rep.* 15, and 1 *Mason's Rep.* 70. A bill of exceptions does not draw the whole matter into examination. but only the points upon which the exception is taken. The only exception taken, on the trial in this cause, was to the decision of the court in refusing to re-examine a witness after the cause had been submitted to the jury. The evidence, and that part of the charge which was material to

show the propriety of the re-examination of this witness, was therefore properly stated in the bill of exceptions; but as the charge itself was not excepted to, it was not competent for the defendant to assign for error any thing contained in that charge. The bill does not purport to set out the whole charge of the court, but only the decision upon a particular question of law. As to that question, the decision was certainly correct; and could not have afforded any ground for reversing the judgment of the common pleas. In *Pennock* v. *Dialogue*, 2 *Peters' Rep.* 15, Story, J. in delivering the opinion of the supreme court of the United States, says: "It has been said on behalf of the defendants in error that it (the evidence stated in the bill of exceptions) called for other and explanatory directions from the court; and that the omission of the court to give them in charge furnishes a good ground for a reversal, as it would have furnished in the court below for a new trial: but it is no ground of reversal that the court below omitted to give directions to the jury upon any points of law which might arise in the cause, where it was not requested by either party at the trial. It is sufficient for us that the court has given no erroneous direction. If either party deems any point presented by the evidence to be omitted in the charge, it is competent for such party to require an opinion from the court upon that point." If that decision was correct in a case where there was a general exception to the charge of the court, and where it was insisted by the plaintiffs in error that there was a misdirection, because the court had, in the charge, omitted that which was matter of law proper to be submitted for the consideration of the jury in deciding upon the facts in the case, it is clear that this judgment ought not to have been reversed on that ground, when no exception whatever was taken to the charge of the court below.

I shall therefore proceed to consider whether either of the objections stated in the bill of exceptions was sufficient to authorize the supreme court to reverse the judgment on a writ of error. For this purpose we must take it for granted that the facts on which the decision of the court below was founded are truly stated in the bill; if the court refuses to

allow a bill of exceptions containing the evidence as it was in fact given on the trial, the remedy of the party is by a mandamus. It is stated in this bill of exceptions that on the trial of the cause Wilson, one of the witnesses, testified to particular facts, and that after the cause had been submitted to the jury, the defendant's counsel insisted that he had testified differently, and offered to call the witness to prove that he had testified in the manner alleged by the counsel, and not in the manner stated in the bill of exceptions. If the court had any doubt as to what he did testify, it might be a proper exercise of their discretion to call the witness and re-examine him as to the fact; but if they are satisfied he did not testify in the manner alleged by the counsel, they might very properly refused to let the witness be re-examined, after he had ascertained from the charge of the court the precise form of words in which it was necessary to state an admission of the adverse party to make his evidence decisive with the jury. From the affidavit subsequently made by this witness, I have no doubt he supposed he had testified that in the conversation with Miss Jones, she distinctly admitted that the agreement for usurious interest was made at the time when she made the original contract for the loan of the money; but the judges of the court of common pleas have, in this bill of exceptions, certified under their oaths of office that he had not in fact so testified at the time the cause was submitted to the jury. On a writ of error for this cause, the bill of exceptions is conclusive evidence that he had not so testified. Was there then any error in refusing to permit him to testify to a fact which both the court and a jury who had heard his former testimony must have known did not exist? The application was to re-examine the witness not as to what he had *intended* to say, but as to what he had *in fact* sworn; and if as stated in the bill of exceptions he did not swear in the manner stated by the defendant's counsel, it would have been palpably wrong for the court to permit him to testify to a falsehood. If the object was to give the witness an opportunity to testify to a fact which he had intended to state in the first place, but which by mistake he had not stated with sufficient particularity or precision, it would have presented a different

question. In such a case it is admitted to be a matter resting in the sound discretion of the court, whether they will permit a re-examination. If such had been the application in this case I have great doubts whether the court ought to have permitted a further examination. This was an attempt on the part of the defendant to establish a defence of usury by the confessions of the lender, and for the purpose of depriving the plaintiff of the money actually loaned. In the case of *Beach* v. *The Fulton Bank*, 3 *Wend. R.* 573, this court said the chancellor was right in refusing to permit the re-examination of a witness, to establish such a defence, after the testimony was regularly closed. If the court of chancery was right in that case, the common pleas was in this; because the proofs were regularly closed before the counsel summed up the evidence to the jury; and the party having failed to prove the fact at the proper time, he had no equitable claim to introduce further testimony to establish a hard and unconscientious defence.

Again; evidence to establish a fact by the confessions of the party should always be scrutinized, and received with caution; as it is the most dangerous evidence that can be admitted in a court of justice, and the most liable to abuse. Although a witness is perfectly honest, it is impossible, in most cases, for him to give the exact words in which an admission was made. And sometimes even the transposition of the words of a party may give a meaning entirely different from that which was intended to be conveyed to the witness. In such a case it seems to me it would not be a proper exercise of discretion in the court, after the question had been submitted to the jury, and after it was seen that a confession in a particular form was necessary to make it conclusive evidence to defeat the action, to permit the witness to remould the confession into that form. *Parish* v. *File*, 1 *Carolina Law Rep.* 238. At all events it would not be such a palpable abuse of the power of the court as to authorize a superior court to reverse their decision, on a writ of error.

In deciding upon this exception we must lay out of view the facts subsequently stated in the bill as to what took place on the application for a new trial. For the purpose of in-

corporating those facts into his bill, it appears to me the defendant has made the bill of exceptions fatally defective throughout.    The trial took place in March term 1825 ; and although it is stated in the return to the writ of error that the bill of exceptions was taken on the trial, yet from the bill itself it appears not to have been taken until August term 1826, after the decision of the court on the application for a new trial.    In the case of *Walton* v. *The United States*, 9 *Wheat. R.* 651, the supreme court of the United States decided that the bill of exceptions must appear on its face to be taken and signed at the trial of the cause ; although it is not necessary in practice that it should be in fact so signed, if it was afterwards reduced to form and signed by the judge, yet in such cases it must be signed *nunc pro tunc*, so as to appear to have been taken and signed during the trial ; and that it would be a fatal error if it were to appear otherwise.    The same principle was again recognized by that court in *Ex-parte Bradstreet*, 4 *Peters' Rep.* 107.    So in *Law & Nelson* v. *Jackson*, 8 *Cowen's Rep.* 746, where a case was made at the trial, under a stipulation that either party should be at liberty to turn it into a bill of exceptions or special verdict, this court refused to consider a bill settled and signed by the chief justice as valid ; because it did not in form purport to have been taken at the trial, and to be signed by the judge who tried the cause at the circuit.    Although the plaintiffs in error in that case finally obtained the benefit of their bill, they were obliged to pay the costs which had accrued on the writ of error, and to go back to the court below, and get the bill signed by the circuit judge, as of the time of the trial, and then to bring up the amended record upon a certiorari alleging diminution.

It can hardly be necessary to take up the time of the court in showing that a bill of exceptions, or writ of error, cannot be sustained to reverse a decision of the court below for refusing a new trial.    It is well settled that no writ of error can be sustained on that ground.    5 *Cranch's Rep.* 11.    *id.* 187. 4 *Wheat. Rep.* 220.    7 *id.* 248.    2 *Day's Rep.* 368.    1 *Conn. Rep.* 49.    6 *id.* 59.    2 *Binney's Rep.* 93.    2 *Serg. & Rawle,* 383.    It does not follow from this, that a party is without remedy in such a case.    In general, the granting or refusing

of a new trial is a matter resting in discretion, and it is not to be presumed that it will be abused, especially in reference to the supreme court of law in this state ; and if a palpable abuse of the power should occur in an inferior tribunal, the supreme court would without doubt interfere by mandamus to correct the proceeding.

The conclusion at which I have arrived in this case is, that there was no error in the record of the common pleas, or properly brought up on the bill of exceptions returned with such record, which could authorize the supreme court to reverse the judgment. The last judgment should therefore be reversed, and that of the common pleas affirmed.

By Mr. Senator BEARDSLEY. This action was brought to recover the amount of a note given by the defendant for borrowed money. The defence was usury. Evidence was given on the trial by both parties, and the cause sumbitted to the jury, who found in favor of the plaintiff, and on this verdict the common pleas rendered judgment. If the witnesses sworn on the trial are all to be credited, probably the weight of evidence was in favor of the defendant. The jury, however, found otherwise, and I think their verdict conclusive on that point.

It is the peculiar province of the jury to pass upon the facts; *Smith* v. *Brush*, 8 *Johns. R.* 34; 3 *id.* 271 ; *id.* 170, 180 ; and where the question of usury or not usury is fairly submitted to the jury, and there is evidence on each side, if they will pronounce, upon their oaths, that there is no usury, I think such finding should be conclusive, unless the court who tried the cause see fit to grant a new trial, or that the verdict is decidedly against the weight of evidence. 1 *Caines,* 24, *and note.* The jury had a right to scrutinize the testimony of the witnesses, and if from their knowledge of those sworn, or from the manner of testifying, they deemed them unworthy of credit, they had a right to disregard the evidence. 1 *Stark. Ev.* 79.

Usury is an odious defence, and he who attempts to avail himself of it should be held to strict proof; and if he has once had a fair trial, and the fact fairly submitted to the jury, to

adopt the language of one of our judges in an analogous case, "he shall not, with my consent, have another." This, I think, accords with the general view of our courts, where there is evidence on each side, and the question purely a question of fact. Such was the opinion in *Smith* v. *Brush*, 8 *Johns. R.* 84, where usury was set up and attempted to be proved by the confession of the party. Thus, while effect should be given to the statute of usury, where the fact is clearly established, it should not be extended in its operation, and thus work injustice to the plaintiff. The law in regard to usury was correctly stated to the jury by the court of common pleas, and I do not understand the defendant below as excepting to the incorrectness of the charge. If not, it is now too late to take exceptions to it in the supreme court, or in this court. 1 *Wendell*, 418. The court stated the law to be that if at the time of the giving the note and the loaning of the money more than seven per cent. interest was reserved by the contract, it was usurious; but not so if there was no currupt agreement at the time, but more than 7 per cent. had afterwards been taken for forbearance, and they left this question to the jury, who found for the plaintiff. 2 *Caines' Cases in Error*, 66. 8 *Cowen*, 669. 4 *East*, 91. 3 *T. R.* 539.

But it is contended that the court of common pleas erred in not suffering Wilson to be re-examined after the cause had been argued by counsel, and after the judge had charged the jury. The court of common pleas decided that it was matter of discretion with them whether they would permit a re-examination after the cause had been submitted, and in the present case they refused it. To this refusal I understand the defendant excepted, and I do not understand the exceptions as going beyond it; but if they did, and the court of common pleas were right on this point, the judgment of that court ought not to be reversed, because I consider the law to have been correctly stated in relation to the question of usury.

It seems to be conceded by the supreme court, and the law undoubtedly is so, that it is matter of discretion with the court whether to admit a re-examination or not; *Kelby* v.

*Goodbread, 2 Taylor's N. Caro. Rep.* 28; and as a general rule, it will be conceded that such re-examinations should be discouraged. *Parish v. Fite,* 1 *Caro. Law Rep.* 238.

If such discretion exists, it can most properly be exercised by the court trying the cause. The judges decided that they considered it improper to call him. They might have discovered a readiness on the part of the witness to testify for one side only, and very properly might have refused a re-examination on that ground; they might have refused it from the manner of testifying on the part of the witness; they might also have refused it on the ground that they were satisfied that the witness did not testify as he pretended he did. Now what tribunal is so competent to decide on these questions as the court trying the cause? It appears to me that the propriety of a re-examination must depend, in a great measure, upon facts and appearances discoverable only to the tribunal before whom the witness is examined, and that no other is so competent to exercise this discretion. I agree with the chief justice, that in ordinary cases it would be most discreet to ask the witness the question ; but still there may be cases where it would not be discreet, and it appears to me that the court trying the cause must, from the nature of the case, generally be left to decide the question. We are not to suppose that courts will wilfully violate their duty, and I think this discretion may safely be lodged with the court before whom the witness appears, unless it should be shewn that the discretion had been grossly abused. The cases referred to by the chief justice were cases of *new witnesses* or *newly discovered testimony. Alexander v. Byron,* 2 *Johns. Cas.* 318. *Mann v. Sayre,* 7 *Johns. R.* 306. *Jackson v. Tallmadge,* 4 *Cowen,* 450. The rule on that subject I think not applicable to the present. Here *the court and jury had heard the testimony* of the witness ; they were as competent to determine what Wilson had testified to as he was, and perhaps more so. If he had testified as he pretended, the jury had heard it, and it was their duty to give such weight to it as they supposed it entitled to. If he had not so testified, but merely wished to amend his testimony or to add to it, the court did right in refusing to call him again ; because it cannot be tolerated as

a legal right that parties, after they have examined and cross-examined a witness and discharged him, shall be allowed as matter of right to call him again after the cause is submitted and he has discovered from the charge of the court what new testimony is required, or what part must be qualified to subserve the interest of the party he wishes to favor. I can readily imagine cases where it would be proper to call a new witness or adduce new testimony after the cause had been summed up, and yet that it would be very improper to allow a witness to be *re-examined* for the purpose of stating what he had previously stated. If one party had an absolute right to call Wilson for that purpose, the other party had a right to call witnesses who heard him testify, to contradict him and prove that he did not testify as he pretended. This shews the impolicy of allowing such examination, except as matter of discretion ; and I have endeavored to shew that if it is discretion, such discretion may very properly be lodged with the court trying the cause, and is not to be called in question by superior courts, except where it has been abused.

The supreme court seem to regard the refusal to call Wilson for a re-examination as error in the common pleas. There is no pretence of improper motives or conduct on the part of the common pleas judges ; and if refusing to permit his re-examination is to be deemed error, it would seem to follow that it might be claimed as matter of right. This will hardly be contended ; because, if it is matter of right, it destroys all discretion, and if it may be claimed as a legal right in one case, it may be in all cases similarly situated ; and whenever a witness discovers the weak point in a cause, if he chooses to be re-examined and thus to favor a party, he is to assert that he testified as counsel represents, and the court are bound in all cases to allow him to testify again and explain what he may say he had testified before. This cannot be tolerated as matter of right.

A motion was made for a new trial in the common pleas, and on that motion Wilson made an affidavit that he had testified as had been represented by the defendant's counsel. The common pleas refused the motion, but the supreme court, in giving their opinion for reversing the judgment,

seem to take it for granted that Wilson did testify before the
jury as he afterwards pretended he did ; and, upon this supposition, they come to the conclusion that the jury found contrary to evidence. The jury heard the testimony, and were the proper judges of the credit to be given to the witnesses ; they constitute the constitutional organ through which the court arrive at the facts. In looking into the testimony, the supreme court were bound to take it as detailed by the court of common pleas in the bill of exceptions, and not as stated by Wilson in his affidavit. The jury have found as they felt constrained upon their oaths to find, and if that finding is contrary to what I should consider the weight of evidence, still, as the question of usury is one peculiarly belonging to the jury, I should not feel at liberty to disturb the verdict. *Smith* v. *Brush*, 8 *Johns. R.* 84. 3 *Johns. R.* 170. *Id.* 271. Substantial justice was probably done by the verdict, and I am for reversing the judgment of the supreme court, with costs.

The objection to the *placita* of the record is untenable. It might have been amended by applying to the common pleas, and in the present stage of proceedings, the statute cures the defect.

It being the unanimous opinion of this court that the judgment of the supreme court ought to be *reversed,* and the judgment of the common pleas *affirmed,* a rule was entered accordingly.