Coxe *v.* Field.

the Corporation of Trenton, on Wednesday the 14th of November next, at such place as the Corporation shall appoint.

*Resolved,* That a copy of this minute of the proceedings of the Court and Bar be delivered to the family of our deceased Brother.

Which resolutions were unanimously agreed to.

On motion of Charles Kinsey, Esq. it was unanimously

*Resolved,* That the thanks of this meeting be presented to *Lucius H. Stockton,* Esq. for his feeling and eloquent tribute to the memory of our deceased Brother, delivered in seconding the motion for the appointment of a Committee, on the opening of the meeting, and that he be requested to furnish a copy for publication.

On motion of Governor Williamson, it was unanimously

*Resolved,* That to record the affection and respect of the Bench and the Bar of the Supreme Court of New Jersey, for their deceased Brother, CHARLES EWING, the Supreme Court be moved to have these proceedings entered on the records of the Court.

GABRIEL H. FORD, *Chairman.*

GARRET D. WALL, *Secretary.*

On Thursday morning Joseph W. Scott, esq. moved the court to have the proceedings of the Bench and Bar, expressive of their high sense of the talents, learning and integrity of the Honorable Chief Justice Ewing, entered on the minutes of the Court. And it was ordered accordingly.

---

### DANIEL W. COXE v. CALEB FIELD.

The manner of administering the oath, or affirmation, in a court of record, proceeding according to the common law, is presumed to be correct and legal, unless it appears to be otherwise on the face of the record. In criminal cases no such presumption is allowed.

Coxe v. Field.

This court on writ of error, will take no notice of an alleged irregularity of the court
below, unless established by the record.

This court for the purposes of justice will consider that, which may be lawfully done
under a rule of court, as already done.

This court on a writ of error will not consider an exception, unless it was alleged in
the court below, and was entered on the record below, or in the bill of exceptions,
which is made part of the record. The bill of exceptions does not draw the whole
matter into examination, but only the point, on which the exception is taken.

This court will not reverse a judgment of the Court of Common Pleas, for refusing to
non suit a plaintiff, where he gave some evidence of his claim. In such a case
the court below did right in submitting the cause to the jury.

———

Caleb Field brought an action of trover and conversion
against Daniel W. Coxe in the Court of Common Pleas of the
county ·of Burlington. Judgment was rendered in favor of
Field, which was removed by Coxe into this court by writ of
error. The grounds relied upon for a reversal, and the circum-
stances of the case sufficiently appear in the opinion of the court
delivered by Justice FORD.

*Hamilton* and *Attorney General* for plaintiff in error.

*W. Halsted* for defendant.

FORD, J. This is a writ of error to the court of common
pleas of the county of Burlington, to remove a judgment in
trover, for the conversion of 3444 lbs. of iron castings. Some
of the errors assigned were not insisted on ; those which were
presented I shall consider in the order in which they were offer-
ed.

First. The first objection respects what is alleged to be a defect
in the record, in not shewing which of the jurors was sworn,
and which was affirmed ; and in not shewing that the affirmants
declared themselves conscientiously scrupulous of taking an
oath. The record is in these words: " and the jurors being
chosen and severally sworn and affirmed according to law, do
say, &c." It is in the form of all records in this court, and of
those made up according to the form of the common law, which
never set out the tenor of the oath or affirmation, nor the man-
ner· in which they are administered. The common law form is :
" being elicited, tried and sworn, do say, &c." *Har. Pr. C. B.*
242. The manner of administering the oath or affirmation, in a

Coxe *v.* Field.

court of record proceeding according to the common law, is presumed to be correct and legal, unless it appear to be otherwise on the face of the record. In criminal cases no such presumption is allowed, and therefore in them the manner is required to be set out; but there is no case or even dictum for it in a civil cause.

Second. The next objection is, that the verdict was rendered in the absence of the plaintiff; but it it not proved by any thing in the record, and is rather disproved by its shewing, that he was present when the trial began. If he departed before the rendition of the verdict, his departure should have been stated on the record, as that on being three times called, he made default; otherwise his departure cannot be recognized; it never can be taken by presumption. He may retire upon an adjournment, as well as the jury, and the court, to the amount of half a dozen times, pending a single trial, for the purposes of refection; but neither his nor their retirements, not even the withdrawing of the jury to consider of their verdict, are ever entered on the record. The court is to see that jurors and parties are in proper attendance after every such recess, and will be presumed to have been governed according to custom and practice. It it fails to do so in any particular it may be required to state the exception to its proceeding in a bill, that will become a part of the record. Unless some irregularity is established by the record, it cannot be taken notice of by this court on a writ of error.

Third. The next objection respects a variance between the verdict and judgment, as to the formal finding of *six cents costs* by the jury. It 's admitted that this variance was in a matter of mere form, and that it was amendable in the court below, but that it has been irregularly made here. An exemplified copy of an order in the court below, directing an amendment that entirely cures this defect of form, is laid before us; and what may be lawfully done under this rule we may consider as being already done for the purposes of justice. The remaining exceptions relate to the merits of the case.

Fourth. The fourth exception is, that the court admitted illegal evidence to be given by the plaintiff below; it permitted him to give in evidence an entry in his day-book, shewing that

he had *sold* to the defendant, at five cents a pound, those very castings which he still claimed as *unsold goods*, in defiance of his own entry. If these goods had been sold to the defendant they became his own property and the conversion of them to his use was a legal act. It is surprising that evidence so much in the defendants' favor should have met with any objection from him. On looking into the bill of exceptions, it shews that this evidence was really given, and it shews that an exception was taken to the opinion of the court on a motion for a non suit; but it does not show that the defendant excepted to the day-book, or that he asked the opinion of the court upon its admissibility; or that the court gave any opinion upon it. Now an exception cannot be considered in this court, unless it was *alleged* in the court below, and moreover was *entered in the record below*. We may not look out of the record for exceptions to a judgment; but we may look into the bill of exceptions for them, because that is made a part of the record; and if we find the exception therein, we may give our judgment whether it ought to have been allowed or disallowed below; for by the words of the statute, " the higher court shall proceed to judgment according to *the same exception*, as *it* ought to be allowed or disallowed," *Rev. Laws* 293. But the statute requires it to be *alleged* below; for its very words are " *when any person* shall *allege* an exception," the higher court may proceed to judgment on the *same*; the statute also requires the exception to be in writing, for it says, " if he *writes* it down " and shew the exception " *written and sealed*." The statute as evidently requires, that the exception, so alleged and written, should be to some *opinion*, either declared, or refused to be declared, by the court below, for the higher court is to allow or disallow the exception according as the opinion delivered was right or wrong. This is in conformity to 3 *Bl. Com.* 372. " If he (the judge) mis-states the law— the counsel may require him to seal a bill of exceptions, *stating the point wherein he is supposed to err*." If he gave no opinion on the point there is nothing for the higher court to allow or disallow. A bill of exceptions is a statement of the *point* on which the court below gave an opinion, and if it gave none, how can the higher court say, that it gave an erroneous one? In the case of *Law* v. *Merrills*, 6 *Wend.* 274, it was decided that " a

Coxe *v.* Field.

bill of exceptions does not draw the whole matter into examination, but only the *point* on which the exception is taken." It is so laid down also in *Bul. N. P.* 316. The cases cited at the bar are to the same effect. Where objectionable evidence is offered and not objected to, it is, considered in most of the cases, as if the objection had been designedly waived, *Palmer* v. *Lorillard*, 16 *Johns.* 353 ; *Beekman* v. *Frost*, 18 *Johns.* 564. We may believe the objection was designedly waived in this case, when we find the evidence was favorable to the defendant, and find him insisting on it here as such. But he cannot present an objection here, which he waived below for his own benefit. The court of Common Pleas gave no opinion of the admissibility of this evidence, and we can give none here for that reason.

Fifth. The last supposed error of the court is for refusing to non-suit the plaintiff. On the other hand, the power to non-suit a plaintiff, is argued not to be in the court, because it can be exercised only by ordering him to be called ; but it cannot prevent him from answering. The court, however, can declare that he has given no evidence in maintenance of his action, and can order him to be called for that reason ; it will then have done its duty and be free from error. If a refractory plaintiff will not submit to the opinion of the court in this mild form, he will have a verdict ordered against him, for a plaintiff can never be suffered to recover against his adversary without some evidence. Therefore, if the plaintiff did not give *any* evidence of his being the owner of these castings when the action was commenced, he ought to have been called, and it would have been a great error not to have ordered it to be done. But if he gave *any* evidence of ownership, the court did right to leave it to the jury ; and our only enquiry is, did he give any evidence of ownership ?

The defendant had put up the castings in his factory and thereby admitted a conversion of them to his own use. He alleged that he had bought them of the plaintiff, and thereby admitted that the plaintiff had had the prior ownership. He did not pretend that he had paid for them, but he very properly considered a sale on credit as valid as one for cash. The dispute became narrowed down to the single point, whether the castings had been sold to him by the plaintiff or not. He referred the

decision of this point in the first place to the plaintiff's own books, and shewed therein an entry of the sale of these castings to him, made in these words with the plaintiff's own hand." Daniel W. Coxe, Dr. To Furnace, for 3444 lbs. castings at 5 cents, $172 20. He proved in the second place that James Hunt had spoke for them as the *agent* and *in the name* of Mr. Coxe, and when they were cast according to order, they were delivered to Hunt and carried by him to the factory for the use of Mr. Coxe's mill.

The great question is, whether the plaintiff gave *any* evidence tending to invalidate this apparent contract and shew it to have been no sale. If he did he had a right to have it left to the jury, and not to have it taken away from them by a non-suit. The court of Common Pleas thought, that he had given some evidence of it, and seem to have had good grounds for their opinion. The plaintiff supposed that he had made a sale to Mr. Coxe, and in that belief he had charged the goods to him in his day book, but he found that the sale must depend on the right of Mr. Hunt to make contracts in the name of Mr. Coxe. If Hunt had obtained the castings under a false pretence, it was a fraud, and no sale ; and as they were not yet put up in the mill, he thought it best to apply to Mr. Coxe for payment, and see whether he would recognize the purchase or disclaim it. As to Hunt, he was not only without money but without credit, at the time he spoke for them ; and immediately after taking them away from the furnace, had failed, and as the witnesses say, had " *cleared out.*" Every thing shewed that the castings had not been sold *to him*, and yet that might be set up for a pretence, because *he* was the person who had taken them away. The plaintiff therefore applied to Mr. Coxe, expecting that he would sanction the sale, and keep the property, or if he refused to do so, that he, the plaintiff, might reclaim them as *unsold* goods. Did Mr. Coxe say that he had purchased them through his agent Mr. Hunt, or would he allow himself to be the owner ? Very far otherwise. The fair interpretation of his answer was an utter disclaimer of the contract and purchase ; he virtually acknowledged that the castings were still the property of the plaintiff, and opened a treaty for the purchase of them. The witness says, that Mr. Coxe offered to buy them, if the plaintiff would sell them and receive

Kingwood *v.* Bethlehem.

lots of land at Bloomsbury in payment. When the plaintiff would not agree to sell for property in Bloomsbury, they parted. The defendant has got a set of castings that suit his mill and has paid nothing for them. The plaintiff sought for nothing more than fair payment, and yet they had managed to fling him into this unpleasant dilemma, that if he sued on the *contract* he might not be able to recover against Mr. Coxe for articles taken up by Mr. Hunt; on the other hand if he sued for them in *tort*, Mr. Coxe might allege a *contract* through Mr. Hunt; and one way or the other keep the castings for nothing. The plaintiff determined to treat it as *no sale*, after what had passed between them concerning lots at Bloomsbury, and leave the point to the common sense and integrity of a jury. The court of Common Pleas was of opinion that there some evidence of its being no sale, even in the estimation of Mr. Coxe himself, and they refused the motion for a non-suit, and left it as a point of fact to be determined by the jury. They certainly did right. There was some evidence of its being no sale. The jury, when they took it under consideration, deemed it not only some, but full and satisfactory evidence of no sale, and found a verdict for the plaintiff. On the whole I find no error. Let the judgment be affirmed.

Judgment affirmed.

Drake, J. concurred.

Cited in *Ludlam* v. *Broaderick* 3 *Gr.* 275 ; *Oliver* v. *Phelps' Spencer*, 183 ; *Apgar's admr*, v. *Hiler*, 4 *Zab.* 809 ; Approved *in Associates of Jersey Co.* v. *Davison*, 4 *Dutcher* 418.