count for the entire amount said property sold for at the first sale. The account filed should be modified in the particulars suggested, and a decree entered judicially settling the same as so modified.

---

(1 Misc. Rep. 253.)

## In re SMITH'S ESTATE.

(Surrogate's Court, Cattaraugus County. November, 1892.)

1. MONEY HELD BY HUSBAND—RIGHT OF WIFE TO INTEREST.

Where a husband receives money from his wife, and after retaining it several years, at her request transfers to her securities in full payment of the principal sum received by him, she is not entitled to recover of his estate interest on the amount so received and retained by him to the date of the receipt of the securities by her, in the absence of any direct evidence of the circumstances and conditions under which he received and held the money.

2. SAME—EVIDENCE.

In a proceeding to establish a claim for such interest against the husband's estate a witness testified to statements of deceased to the effect that he had received the money, loaned it, and kept it invested, and collected the interest; that he told his wife he would set over mortgages which would pay the face of the debt, and asked her to let him continue to collect the interest, and he would fix the matter of the use of the money later on. Another witness testified that the wife said to her in deceased's presence that the latter told his wife that, so far as the interest was concerned, the law will give that to her. *Held* insufficient to entitle the wife to such interest.

Proceeding for the judicial settlement of the account of E. A. Nash and Susan Smith, as executors of the estate of Joseph Smith, deceased.

J. M. Willson, for executors.
B. A. Barlow and W. H. Henderson, for contestants.

DAVIE, S.   Joseph Smith died on the 10th day of August, 1891, leaving a last will and testament, which was duly admitted to probate by the surrogate's court of the county of Cattaraugus September 19, 1891.   By the first item of said will the testator bequeathed to his widow, Susan Smith, the use and income of $5,000 during life, such provision to be accepted by her in lieu of dower; by the second and third items the use and income of the entire estate, both real and personal, are devised and bequeathed to Etta Blanchard, an only child of testator, for and during her life, subject, however, to the provision in favor of the widow, as aforesaid; by the fourth item the entire residue, after the expiration of said life estates, is devised and bequeathed to the descendants of the said daughter, Etta Blanchard.   The only child or descendant of said daughter is Charles S. Blanchard, a son, who is a minor, and appears herein by special guardian.   Upon the probate of said will letters were issued thereon to E. A. Nash and to the widow, Susan Smith, they being the executors named in the will, and who now present an account of their proceedings as such for judicial settlement.   No objection is made to the

executors' account, as filed, but the widow presents a personal claim against the estate for the sum of $1,088, to which objections are filed on behalf of the daughter, Etta Blanchard, and the special guardian, so that the entire controversy in this case relates to the validity of the personal claim. The facts upon which such claim is predicated, as disclosed by the evidence, are substantially as follows: The testator died at the age of 83 years. Early in the year 1879, the testator, then a widower, was married to the claimant, and lived with her upon her farm for about one year after such marriage. On the 15th day of January, 1880, claimant sold said farm, and used a part of the proceeds in the purchase of a house and lot in the village of Cattaraugus, which testator and claimant occupied as a home to the time of his death. At the time or shortly after the sale of the farm $1,300 of the proceeds of the sale thereof came into the hands of the testator. Certain personal property of the claimant was also disposed of, and testator received the money arising from such sale. Testator was also at the same time indebted unto claimant upon a promissory note for the sum of $125 or thereabouts. The evidence does not disclose the precise amount of money received by the testator from all three of these sources, but it appears that the parties had substantially agreed upon the sum of $1,600 as the amount of such principal indebtedness. Matters remained in this situation until December 28, 1889, the claimant in the mean time, on various occasions, expressing a feeling of insecurity over her money matters, and a desire, as explained by the witnesses, of having "the money matters fixed up." As a result of such solicitude on part of the claimant, the testator, on or about the 28th day of December, 1889, assigned and transferred to the claimant valid securities, then owned and held by him, to the amount of $1,600. Nothing further appears to have taken place between the parties with reference to this matter down to the time of the death of testator; and now the widow, while acknowledging full payment of the principal sum by the transfer of said securities, seeks to recover interest thereon during the time such fund remained in the hands of the testator.

There is no evidence whatever showing that the testator collected or received any part of the interest accruing upon said securities after they were assigned to the claimant, so that the question relates entirely to the liability of the estate for interest prior to the time of such transfer. In the investigation of this question we are confronted at the outset with the fact that there is no direct evidence of the circumstances or conditions under which said money was received and held by the testator. While it is conceded that up to the time of the transfer of said securities testator held $1,600 of claimant's money, the agreement under which he held it, whether by way of loan, or as a deposit, or as the agent of claimant, to invest for her benefit, is almost entirely a matter of conjecture, and the question is whether the entire transaction is susceptible of any construction which will justify the allowance of the claim. If we were warranted in finding from the

evidence that such fund was in the hands of the testator as a deposit, subject to the call of the claimant, then no interest could be recovered, because the evidence fails to show any demand on the part of the claimant or refusal on part of testator to pay over the fund. Boughton v. Flint, 74 N. Y. 476; Adams v. Bank, 36 N. Y. 261. Nor does the evidence disclose a liability for interest upon the theory that testator received and collected this fund as the agent of claimant, and for her benefit, and for that reason was bound to account to her for the income actually derived therefrom. In the case of Boughton v. Flint, above cited, it was held that where M., upon her final accounting as executrix of her deceased husband's estate, claimed the proceeds of certain notes, and a bond and mortgage received by him upon the sale of real estate belonging to her, and which were paid to him in his lifetime, the estate was chargeable with the principal and interest received by him; but the difficulty in applying that authority to this case is that the evidence utterly fails to show the amount, if any, of interest or income received by the testator. It affords no tangible basis of computation, establishes no measure of damages. The declaration of the testator to the witness Rich, to the effect that he had had the claimant's money, and invested it, and collected the interest, is rendered practically nugatory by his statement to the witness Dawson that he had the claimant's money, and had used it himself. It would require a vigorous exercise of the imagination to hold that the testator, through his control of this fund, received any definite or determinable amount therefrom. Nor can it be urged that claimant is entitled to recover interest upon the theory that this money came into the hands of the testator under such circumstances that he was in duty bound to immediately pay it over to the claimant, and therefore liable to interest by way of a penalty for failing to perform such duty, for the claim as filed is one for interest alone, and not for a general balance. In the verification of the claim filed the claimant acknowledges, and the evidence shows, a full satisfaction of the principal; and the law seems well settled that in those cases where interest is allowable as a penalty, and not by virtue of an agreement to pay interest, satisfaction of the principal obligation bars a claim for interest. Tenth Nat. Bank v. Mayor, etc., 4 Hun, 429; Jacot v. Emmett, 11 Paige, 142; Gillespie v. Mayor, etc., 3 Edw. Ch. 512; Tillotson v. Preston, 3 Johns. 229; Fake v. Addy's Ex'r, 15 Wend. 76; Consequa v. Fanning, 3 Johns. Ch. 587; Johnston v. Brannan, 5 Johns. 268; Cutter v. Mayor, etc., 92 N. Y. 166.

But the principal contention of the claimant is that the evidence inferentially shows an agreement on the part of the testator to pay interest; in other words, we are asked to conjecture or spell out from proof of certain declarations of testator a liability against his estate. The evidence of the witnesses Phillips and Crandall relates solely to declarations of the testator, showing that he had received certain moneys of the claimant, but shows no statement on part of the testator acknowledging any liability other than for

the principal. The evidence of the witness Rich does not disclose any promise on the part of testator to pay interest. The material part of this witness' testimony was as follows:

"I have heard him [testator] say how much of her money he had had. The sum was $1,600. He called it that amount. He said, 'I have loaned it, and kept it invested, and collected the interest.' That she was afraid he might die, and she would have some trouble; and that she said he ought to fix it in his lifetime. That he told her that as long as they both lived they were practically one, and it didn't make much difference. I heard him refer to this money matter on a good many occasions, sometimes seriously, and sometimes jokingly. He said: 'You know about this money between Susan and myself. She wants it fixed differently and I have decided to fix it; and I have told her that I would set over to her two mortgages which would pay the face of the debt.' That he had requested of her, if he did turn them over, to be allowed to collect the interest on the mortgages the same as he had been doing. I said, 'I suppose she would as soon let you do the business for her.' Then I said she would want some provision made for the use of the money, and he said he would fix that later on."

The remaining witness called on behalf of the claimant testified that the testator said to her that he had assigned some securities to his wife, and that she, the claimant, once said to her in presence of the testator, that "she and he had had some conversation about that money; that he had said that, so far as the interest was concerned, the law will give that to me." In disposing of this question, we are not permitted to disregard the rule laid down by the court of appeals, that claims withheld during the lifetime of the alleged debtor, and sought to be enforced against his estate after his death, should be carefully scrutinized, and only admitted upon satisfactory proof. Kearney v. McKeon, 85 N. Y. 136. It is always unsatisfactory to uphold a liability upon proof of declarations alone. Courts have had occasion heretofore, and with good reason, to criticise evidence of this character. In Law v. Merrills, 6 Wend. 268, the chancellor says:

"Evidence to establish a fact by the confessions of the party should always be scrutinized and received with caution, as it is the most dangerous evidence that can be admitted in a court of justice, and the most liable to abuse. Although a witness is perfectly honest, it is impossible in most cases for him to give the exact words in which an admission was made, and sometimes even the transposition of the words of the party may give a meaning entirely different from that which was intended to be conveyed to the witness."

The evidence presented in this case on part of the contestants shows acts and declarations on part of both the testator and claimant inconsistent with the idea of the existence of an agreement on part of testator to pay interest, and upon a thorough examination of all the evidence in the light of the various authorities cited, I am clearly of the opinion that this claim should be disallowed.

A decree will be entered accordingly.