THOMAS M. OGLE, plaintiff below, plaintiff in error, v. THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY, defendant below, defendant in error.

THE dedication of lands by the owners of it for the purpose of a public avenue, across which a railroad has already been built, cannot impair or interfere in any way with the rights of the railroad company within the lines of their road under their charter, whether to the soil, or to the right of way, to hold occupy and enjoy the same.

There being no direct evidence on the trial below, of the acquisition of title by the railroad company under the provisions of its charter, the jury were correctly instructed by the Court that an uninterrupted and undisputed possession and use of the *locus in quo* for the purposes of a railroad during thirty years by the Company, was presumptive evidence that it had complied with the requirements of the law and thereby acquired the fee simple in the land, or at all events, it would be presumptive evidence of a grant of the right of way over the land for the purposes of a railroad, which for defence to the action, would be as effectual as the fee simple. The use of a siding in connection with the main track, is incident to a right of way for railroad purposes. It is a part of the easement, as much so, as is the running of the trains over the main track of the road.

If after such avenue has been laid out across such railroad and dedicated to public use by the owners of the lands on either side of the railroad, the company raises the grade of it in the avenue and constructs and

raises embankments sloping downward from the road into the avenue, to facilitate the crossing of the road by horses and carriages and other vehicles using the avenue, and permits and consents to their crossing the road when using the avenue, it will not amount to such a recognition or acknowledgment that the avenue is a public highway, or to such an acquiescence, concurrence, or co-operation on their part in the dedication of it to the uses of the public, as will operate as a waiver of their right to keep their cars standing on a siding within the lines of their railroad, and partly within the limits of the avenue, and so near as to frighten horses upon it in crossing the railroad, or estop them from denying the right of the public to use that, as well as all other parts of the avenue, as a common highway. But under the circumstances any use of such crossing by persons passing or traveling along such avenue, must be taken to be subordinate or subject to the paramount right of the company to hold, occupy, and use the railroad and its siding and the lands within the boundaries of their road. The company by the acts referred to, granted to the public what may be called a privilege of crossing, which once granted, became irrevocable, and they could not render the exercise of it dangerous by any use of the track not needful for the due prosecution of their business. But that did not make the place of crossing a public road or street, in which the right of the public to cross was absolute and paramount to any use of it by the company.

If the declaration in such a case alleges the *locus in quo* to be a public road or a public street, and that the act from which the injury complained of resulted, was wrongfully and unjustly done by the defendants, in consequence of which negligence and improper conduct the injury resulted, the omission of the Court below to submit the question of negligence to the jury, will not be error.

WRIT of error to the Superior Court in and for New Castle County, heard before Bates, Chancellor, and Wooten and Wales, Judges. For a statement of the case in the Court below, see *ante page* 267. The errors assigned were, *first*, that the Court below erred in charging the jury that there was a grave question underlying that of the dedication by Tasker & Shaw of the land referred to as a public highway. They could undoubtedly dedicate their own land for such a purpose, but not the land of other persons. They could not dedicate the land of the defendants, the railroad company, to such a use, nor could they by the dedication of their own, impair, or in any manner interfere with any rights of the railroad company within the lines of their road under their charter, whether to the soil itself, or to the right of way over

it, to hold, occupy and enjoy the same. *Secondly*, in charging the jury, after reciting the provisions of the charter of the railroad company, as published in the 8th volume of the Laws of the State, that after the lapse of more than thirty years, during all which time the company had been in the undisputed and uninterrupted possession and occupation of these lands, and had used them for all the purposes of their railroad, it was to be presumed in the absence of evidence to the contrary, that all the requirements of the statute had been complied with, and that the lands were vested in the company in fee simple. But even if they were not the owners of the soil, they had an undoubted right of way over the lands within the boundaries of their road, so that it was not very material so far as concerned this case, whether they were the actual owners of the fee or not. *Thirdly*, in charging the jury that under the circumstances, any use of the crossing by persons passing or traveling along the avenue, must be taken to be subordinate and subject to the paramount right of the company to hold, occupy and use their railroad and its sidings and the lands within the boundaries of the road. If, therefore, they should be satisfied from the evidence that the cars were standing on the siding mentioned and within the boundaries of the railroad, although they might have been within the lines of what is called Washington Avenue, their verdict should be for the defendant, for the reason that the company had a right to place and leave them there, whether they were to be considered the owners of the soil, or the owners of the railroad and the right of way, as the case might be. And, *fourthly*, in refusing to charge the jury as requested by the counsel for the plaintiff, that if there was satisfactory evidence that the defendants permitted and consented to the public travel along the Washington Avenue to and fro over or across their railroad, then such permission and consent amounted to a recognition and acknowldgment on their part, that the said avenue was a public highway, and that if the agents of the defend-

ants did acts to facilitate the passage of carriages and other vehicles along the avenue over or across their railroad, it amounted to a co-operation on the part of the defendants with the owners of the land, in the dedication of the avenue to the use of the public as a common highway; and on either ground it would operate as a waiver of their right to keep their cars standing on the avenue in the *locus in quo*, and would estop them from denying or contesting the right of the public and the plaintiff to use it as such.

*Booth*, for the appellant. Tasker & Shaw, owners of the land over which it lies, opened Washington Avenue as a public street in 1858. The action below was for an injury sustained by the plaintiff by reason of the alleged negligence of the defendant in leaving their railroad cars standing at all hours of the day, and at night particularly, at the crossing of it over their railroad, in such a position and so close to it, as scarcely, at times, to leave room to get by them, and to produce the injury, by frightening his horse and causing him to shy and upset his carriage down the embankment of the avenue at that point. But there was no evidence whatever before the jury as to the title of the company to the *locus in quo*, and none before the court either, except the charter of the company, which, it is true, is a public statute of the Legislature. And yet the court treated it as if it was, not only evidence, but conclusive evidence, to the jury of the title of the defendants to the land in question, or of their right of way over it, which it was not, and which was a material error in that particular. Nor was there any evidence, except from the charter as contained and published in the 8th volume of the laws of the State, that the company had been in possession and use of the land, or of the right of way over it as a railroad company for thirty years past, or any other period of time, and there was no presumption of it, except such as resulted from the same source, the charter as so published. Such a presumption, however, could not have been drawn,

39

even by the Court, much less by the jury, from the mere passage and publication of the charter thirty years ago, without any proof in relation to the matter. If the defendants so far acquiesced and concurred in, and co-operated with Tasker & Shaw in the dedication of the avenue to the public use as a common highway, by constructing and providing at their own expense, a crossing in it over the railroad at that point, or permitted Tasker & Shaw, or any other person, to enter on their railroad and construct such a crossing for the convenience and accommodation of the public traveling and using the avenue, it would not only constitute a waiver of their right afterward to object to, or to interfere with the free and unrestricted use of it as a common highway by the public, but they would be estopped in law, from denying or interfering with such free and unrestricted use of it; and if by reason of the negligence or default of their servants in leaving their cars on the siding standing so near the crossing as unreasonably and unseasonably to obstruct or endanger the passage of it by horses and carriages, the plaintiff sustained the loss and injury complained of in this case, they would certainly be legally liable to him in damages for the necessary consequences of it. For if any owner of land dedicates it to public use as a highway, he is estopped from revoking it, or denying the right of the public to the enjoyment of the easement. *City of Cincinnati v. White's Lessee*, 6 *Pet.* 431. That the title of the company to the *locus in quo* was not involved in the action, and was in no wise material to it, for the action was on the case for an injury resulting to the plaintiff, as the consequence of their negligence, and the court should have so instructed the jury. The comments of the court on the law in regard to the legal title of the company to the locality in question, were, therefore, not only immaterial and irrelevant, but were calculated to mislead and confuse the minds of the jury.

*Harrington*, for the defendant. The Court below did

not err in any respect excepted to by the plaintiff, but if it had, this Court could not entertain any of the exceptions presented on the other side, or pass any opinion upon them, or determine whether it erred in any of the matters alleged, because the bill of exceptions filed in this case, does not present the evidence, or the substance of it below on any of the points, or matters of fact referred to in the assignment of errors, and without it, this court cannot determine whether it was material for that court to charge the jury as was requested by the counsel for the plaintiff; but if it was material, then without the evidence or the substance of it, presented here in the bill of exceptions sent up with the record, this court could not determine whether that court had erred, or not, in charging as it had upon it.

*Booth.* The exceptions were mainly on the ground that there was no evidence before the jury to warrant the charge as made by the Court below; and, of course, if such was the case, it could not be set out in the bill of exceptions. And as to the remaining exception, there was sufficient matter of fact disclosed in it, to exhibit the error of the charge on the point or principle of law referred to in it.

*Wales, J.* I have been unable to see the force of the first objection made by the plaintiff in error to the charge of the court below. Reduced to its simplest form, the position taken by the court was that *Tasker and Shaw* could dedicate their own lands to the use of the public, but had no right or power so to dedicate the lands of other persons. The statement of this principle, in the absence of any evidence to modify, change or restrict its application in this case, is sufficient to establish its correctness. The plaintiff's counsel, in support of his exception to this part of the charge, contended that there was no evidence before the jury to show by what title the defendants held that part of the road crossed by the Washington Avenue ;

to which it may be answered that they occupied and used the *locus in quo* before and at the time of the alleged obstruction, and that there was the same absence of evidence as to the right or title of Tasker and Shaw in the soil over which the Railroad was laid. On this point, therefore, I think the question of the right of way in the public across the Raiload, to the extent claimed by the plaintiff, was properly left to the Jury.

The second exception is that there was error in the charge to the jury that, after reciting the provisions of the charter of the Newcastle and Frenchtown Turnpike and Railroad Company, as found in the 8th. vol. Del. Laws, the Court did further instruct the jury, in the absence of evidence in relation to the title of the said Rail Road Company to the *locus in quo*, that after the lapse of more than thirty years, during all which time the company had been in the undisputed and uninterrupted possession and occupancy of these lands and used them for all the purposes of the Railroad, it was to be presumed, in the absence of all evidence to the contrary, that all the requirements of the statute had been fully complied with, and that the lands were vested in the company in fee simple, but even if they were not the owners of the soil, they had an undoubted right of way over the lands within the boundaries of their road.

It is a familiar rule that courts are bound to take notice of the public statutes of the State, and there could not have been error in bringing to the notice of the jury, the statute referred to, nor in instructing them that the N. C. & F. Turnpike & R. R. Co. having acted under its charter for such a long period of time, it was to be presumed that all the provisions of the law granting them corporate rights and privileges, and necessary to be obeyed and complied with before such rights and privileges could be exercised and enjoyed, had been fully obeyed and performed, and that it was incumbent on the plaintiff to rebut such presumption by evidence to the contrary.

The third exception is that the Court instructed the

jury that if they should be satisfied from the evidence that the cars were standing within the boundaries or limits of the railroad, although within the lines of what is called Washington Avenue, their verdict should be for the defendants, for the reason that the company had a right to place and leave their cars there, whether they are to be considered the owners of the soil, or the owners of the way. The direction of the Court, as it appears from the context of the charge, the whole of which makes a part of the record in this case, proceeds upon the ground that the defendants had the paramount right to the use of their road and had been in the constant practice of using it with their trains for many years prior to the opening of Washington Avenue, and that whatever right the public may have acquired to pass over and across the Railroad, was subordinate to that of the defendant, or in other words, that the public had only a qualified and restricted right of way. This conclusion naturally followed the preceding instructions to the jury wherein the court stated, that under the laws of the State, the *N. C. & F. T. & R. R. Co.* had become the owners in fee of the land over which their road passed, and that without they had performed some acts by which they had divested themselves of such title, or surrendered their rights, they were still to be considered as the owners of the soil and the right of way. In my view this instruction was correct.

The last error assigned is that the court refused to charge the jury, as requested by the plaintiff's counsel, that if the defendants had permitted and consented to the public travel along the avenue to and fro over the railroad, that such permission and consent amounted to a recognition and acknowledgment by the defendants that the said avenue was a public highway; and that if the defendants had performed acts to facilitate the passage of carriages and other vehicles along the avenue to and fro over the Railroad, then that such acts amounted to a co-operation of the defendants with the owners of the land over which the Washington Avenue was laid out, in the dedication of it to

the use of the public as a highway, and that this consent or co-operation would operate as a waiver on the part of the company of any claim of their right to keep their cars standing on the railroad at its intersection with the Avenue. This is in substance the error assigned, and it was more fully discussed before us then any of the preceding ones, the plaintiff's counsel contending that the defendants were estopped by their own acts from denying that the *locus in quo* was part of a public highway.

In deciding this point we must turn to the record, and on an examination of the whole charge of the Court, the apparent error presented by the plaintiff's counsel is removed. The plaintiff's counsel relied much on the fact that the defendants had made embankments on each side of the Railroad to facilitate the crossing of carriages, but there is nothing in the record to show that this was done more, or as much for the public use, than their own convenience ; nor is the permission alleged to have been given by the defendants to the public to cross the railroad, inconsistent with their own reserved and paramount right to use it for their own purposes at all times and on all occasions. The defendants never abandoned the use of their road, nor can the inference be drawn from any facts presented in the record that they intended to reverse their relation to the public by yielding to the latter the paramount use of the *locus in quo*, and thereby to subject themselves to a qualified and subordinate right of way.

It must also be taken into consideration that it was incumbent on the plaintiff to prove that this crossing was part of a public road or highway, and not for the defendant to establish the negative. But in addition to this the record shows that if there had been acts of permission and consent allowing the public to cross the railroad at its intersection with the avenue, or acts of co-operation in dedicating the land to the public by making embankments to render the crossing convenient, all these acts were done and performed by the lessees of the owners of the railroad and could not, therefore, destroy or impair the rights of

such owners. A tenant cannot divest his landlord of his property or abridge his rights without his consent.

*Bates, Chancellor.* The plaintiff claims damages for an injury which he sustained while crossing, with a horse and carriage, the railroad of the defendants at the place of its intersection by the Washington Avenue in New Castle. The injury was caused by his horse becoming frightened at some cars standing on a sideling at the crossing and within the lines of the avenue. The defendants are charged in the narr on the ground that the *locus in quo* was a public road or a public street, over which he was lawfully passing, and that the cars were on the sideling " wrongfully," at least, as against him. At the trial, as the record shows, there was no dispute as to the occurence of the injury and its cause. The controversy turned upon the question, which had the paramount right in the *locus in quo*, whether the public to use it as a crossing for the avenue, or the defendants to use it for the purposes of their railroad as before the avenue was laid out.

On the part of the defendants, it was not denied that the public had, since this avenue was laid out, used the crossing, and this with the defendants' acquiescence, and therefore that the plaintiff was *lawfully* upon it; but they claimed that such use by the public was subordinate to their own right to occupy and use this part of the track for all the purposes of a railroad, including the use of the sideling in the manner which was alleged to have caused the injury.

The plaintiff, in reply, controverted the sufficiency of the proof of title in the defendants to the *locus in quo*, and further insisted that even if the title had been acquired, still that by force of the dedication by Tasker & Shaw of the land over which Washington Avenue was laid out, and also of certain acts of the defendants claimed to amount to a concurrent dedication of the crossing, or at least, to a recognition of the right of the public to use it as a part of the avenue, there had inured to the public a

right so to use it paramount to the pre-existing rights of the defendants in it.

The Court instructed the jury as to what proof was necessary to establish the fact of a dedication by Tasker & Shaw; also that such dedication if made, could have no effect upon the rights of the defendants; further that upon the facts proved, the title of the defendants was presumptively established, and then setting forth as proved and and uncontroverted a certain state of facts bearing upon the main question, which was as to the relative rights of these parties in the crossing, the court gave it in charge to the jury as a conclusion from those facts, that the rights of the defendants in the crossing were paramount to those of the public, and under this instruction submitted the case upon the single question whether the cars which caused the injury were or were not standing within the lines of the railroad. The charge as to the evidence necessary to establish a dedication by Tasker & Shaw is not drawn into question: it is to the instructions given on the other points stated that the exceptions are taken, which are now to be considered.

The Court charged the jury that however clearly a dedication by Tasker & Shaw of their own land for the purposes of an avenue might have been proved, yet that this alone fell short of establishing any right of the public in the railroad crossing; for as the Court declare Tasker & Shaw could not dedicate the lands of the railroad company to such use, nor could they, by the dedication of their own lands, impair or interfere in any way with the rights of the defendants within the lines of their road under their charter, whether to the soil, or to the right of way, to hold, occupy and enjoy the same." The correctness of this position is so self evident that we cannot discuss it. The exception to it is overruled.

The second exception applies to the instruction of the court upon the subject of the defendants' title to the *locus in quo*.

This was a part of the track of the New Castle & French-

town Turnpike & R. R. Co. under which company the defendants were operating the railroad when the injury complained of occurred; and it had been held and used by the New Castle & Frenchtown Company and its lessees since its original location more than thirty years ago. Under the provisions of the charter of the N. C. & F. T. Turnpike & R. R. Co. passed in 1831, the company was authorized to enter upon and occupy lands for the use of the road, and provision was made for its acquiring title in fee simple to the lands occupied, upon compliance with certain prerequisites, which being fully set forth in the charge of the Court need not be here repeated. There was no direct evidence at the trial, of the acquisition of title under these provisions. The jury were instructed, in substance, that an uninterrupted and undisputed possession and use of the *locus in quo* for the purposes of a railroad during thirty years by the Frenchtown Company and those holding under it, was presumptive evidence that the company had complied with the requirements of the statute and thereby acquired the fee simple in the land : or that, at all events, such a possession and use, aside from the provisions of the statute, would be presumptive evidence of a grant of the right of way over the land for the purposes of a railroad, and that such right of way would be for defense to the action, as effectual as the fee simple.

This instruction is correct on both the points embraced in it. The occupancy and use of land for any specific purpose during a period of twenty years and upwards without adverse claim, is presumptive evidence of the grant of such an easement in the land as the use made of it requires. This is a principle of very general and familiar application under which arise a variety of prescriptive rights, such as rights of way, common &c. Applied to the case of land occupied and used for railroad purposes in the absence of any statutory provision for acquiring the fee simple, it would raise in favor of the Company the presumption of a grant of the right of way without the fee simple, the right of way being an easement adequate for such an occupancy and

40

use of the land. In this case, however, the charter contem-
plates that the fee simple shall attend the use of the land,
and to this end provides for its being acquired in a mode
more convenient than by the ordinary forms of convey-
ance and one therefore likely to be resorted to. The land
having since been held and used for the purposes author-
ized by the charter, must be presumed to have been taken
under it and in accordance with its requirements. *Omnia
esse rite acta præsumuntur.* Where a right, privilege, or
office created by law is in fact exercised, in a collateral
proceeding, i. e. one not specially instituted to try the
question, it is presumed, until the contrary is shown, to
have been exercised in accordance with any legally pre-
scribed conditions. Thus if a person exercises an office,
it is presumed, except in a *quo warranto*, that he has the
legal qualifications for it and has been inducted into it
with any requisite formalities. The maxim cited applied
as well to private as to official acts, even to transactions of
a more private nature than those now under consideration.
In *Doe d. Griffen v. Mason,* 3 *Camp.* 7, the plaintiff's title rest-
ed upon the assignment of a term to secure an annuity : but
there was no proof of the annuity being enrolled pursuant
to the statute 17 Geo. III. The Court presumed a compli-
ance with the statute. In *Benson v. Bolles,* 8 *Wend.* 175, it
was announced as a general doctrine and applied to the
case that "where a party has a legal right to enter into
possession of land in one character or under one title, the
law will presume that he entered in that character and
under that title." See also *Broom's Legal Maxims* 511
*Law Libr.* 429—1 *Phil. on Ev.* 451, with *Cowen & Hills notes
Part. I.* 460. Upon the same principle land actually occu-
pied and used by a corporation for the specific purpose
provided for in their charter, must be presumed to have
been taken in accordance with the law authorizing the
appropriation of it. In a collateral proceeding, which this
is, such a presumption attaches to the possession and use
of the land from the time when it is taken. Within the
period of twenty years afterward, this presumption is sub-

ject to be rebutted. The lapse of over twenty years makes the presumption conclusive. The jury, therefore, were correctly instructed that a title in fee simple in the N. C. & F. T. Turnpike & R. R. Co. was shown. But as it was stated by the Court below, it is immaterial whether the N. C. & F. T. Turnpike & R. R. Co. has acquired the fee simple under the provisions of the statute, or held only a prescriptive right of way. For the ground of defence was the right of that company's lessees to the use of the sideling, and the use of a sideling in connection with the main track is incident to a right of way for railroad purposes. It is a part of the easement, as much so, as is the running of trains over the main track; so that in order to establish the right to use the sideling and to maintain the defence in this case which rested upon that right, a right of way over the *locus in quo* is as effectual as the fee simple in the soil.

It was strenuously insisted in argument that any instruction respecting title in the defendants was irrelevant and on that ground subject to exception; because, as it was argued, the action was for negligence in the exercise of a conceded right to use the road, as by keeping the cars on the sideling at an unreasonable time, and that the title of the New Castle & Frenchtown Co. was not drawn into question. But this objection is not sustained by the record. By the narr the defendants are not charged with negligence as for keeping the cars in an unskillful manner or at an unseasonable time on a sideling where they had an acknowledged general right to place them, but they are charged with placing their cars "wrongfully," i. e. wholly without right, on ground which is alleged to be a public road or a public street unqualified by any recognized title of the defendants therein. In another connection this point will present itself for further consideration.

The second exception is overruled.

The fourth exception will next be considered. It presents the main subject of controversy. It appears that the defendants, from the time Washington Avenue was laid out in 1858, acquiesced in the use of the crossing by

persons passing over the avenue. In 1863, in conse-
quence of a change in the course of the railroad eastward
of the avenue, it became necessary to raise the grade of
the road bed, and to render the continued use of the
crossing practicable as before this change of grade, the
defendants caused a space of eighteen or twenty feet on
each side of the road, and within the lines of the avenue,
to be graded up to the level of the track as raised.

The plaintiff's counsel prayed the Court to charge in
substance that by these acts, the defendant had not only
conceded to the public the privilege of crossing the track,
but had wholly subordinated to the public use of the
crossing their own rights in it as a part of their railroad
track, so that as against persons using the avenue the
defendants had not the right to place or keep cars on the
sideling,—not even in the usual and proper course of
their business. To this extreme result it is claimed in
the prayer that the acquiescence of the defendants oper-
ated. For the instruction asked is that by the acts
referred to, operating either as a co-operation with Tasker
& Shaw, in the laying out of the avenue, or as a waiver,
or as an estoppel *in pais*, the defendants became divested
of "any claim" to keep their cars on the crossing, that
is, at any time, in any mode, or for any purpose, at least,
so as to interfere with the use of it by persons passing
over the avenue.

The Court refused to charge in accordance with this
prayer; but on the contrary, after setting forth the
before-mentioned acts of the defendants and other cir-
cumstances explanatory of these acts established in proof,
they instructed the jury thus:—that "under the circum-
stances any use of the crossing by persons passing or
traveling over the avenue must be taken to be subordi-
nate or subject to the paramount right of the company
to hold, occupy and use the railroad and its sideling and
the lands within the boundaries of their road.

In thus dealing with this subject we think the Court
did not err. It is true that the defendants by the acts

referred to, did grant to the public what may be called a privilege of crossing—that such privilege once granted became irrevocable; further, that the defendants did, to some extent, qualify their own rights previously absolute with respect to the mode of using the track, for having given to the public this privilege, they could not lawfully render the exercise of it dangerous by any use of the track not needful for the due prosecution of their business. But all this falls short of the position assumed in the prayer for instructions, and upon which the narr grounds the liability of the defendants, viz.: that the place of crossing was a public road or street in which the right of the public to cross was absolute and paramount to any use of it by the defendants; that as against the public the placing or keeping cars on the sideling was always and wholly wrongful, and the defendants were liable for the consequences, whether such use of the sideling was within the proper course of their business or not. This is the question presented, and which we proceed to consider. Two or three very plain considerations will help to answer it.

First, then, let it be noted that it is wholly a question of intention on the part of the defendants whether the right of crossing granted by them was to be exercised as a right paramount, or whether as subject to the rights of the defendants to the continued use of their track and sideling for all the legitimate purposes of a railroad.

At the laying out of the Washington Avenue the defendants (whether holding the fee in the soil or whether a right of way only, it matters not) had absolute control of the land over which the track extended. The avenue was not opened under the provisions of the statute for condemning land to public use as a highway. It was a voluntary grant by Tasker & Shaw to the public of an easement in their own land, which affected no right of the defendants and imposed upon them no obligation. Whether persons using the avenue should cross the railroad track at all, and if at all, subject to what condition this privilege should be exercised, depended upon the

voluntary concession of the defendants. Again, as in the absence of an express grant the intention of the defendants is to be ascertained from their acts considered in connection with all the attending circumstances, let us before examining their acts observe this important principle, viz.: that a surrender by the defendants of their paramount right in the use of the track for all the purposes of their business will not be inferred from acts other than those of unequivocal and conclusive import, such acts as do not admit of a contrary construction. One possessing a legal right or advantage cannot be divested of it upon mere presumption, which he would be, were a grant of it inferred from equivocal and inconclusive acts. When, therefore, in the absence of an express grant, the concession of a right is sought to be deduced from the acts of a party, as in a case of waiver or of estoppel *in pais*, the acts must be such as, if relied upon to establish a waiver, are consistent only with a relinquishment of the right as it is claimed, or if relied upon to work an estoppel, the acts must be such as could have been understood by those affected by them only as importing a relinquishment of the right. So the acts from which a dedication of land to public use is presumed, are always of the like conclusive character. The owner of a body of land in order to enhance the value of what he keeps, throws open to the public a part of it, and wholly abandons it, except that he may use it as one of the public. This is held to be a dedication simply, because it can mean nothing else. To the present case the rule now under consideration applies with peculiar force; for here the question concerns no ordinary right or interest, but it touches the exercise of a corporate franchise created by law, and which involves important interests as well to the public as to the corporators. Any abridgement of such a franchise, or of the facilities for its exercise, is most unlikely to have been intended. It remains now to apply these considerations to the case.

The plaintiff grounds his prayer for instructions upon

two acts of the defendants, viz.: their consent to the use of the crossing by the public, and their having facilitated such use of the crossing—by what mode is not specified. These two acts separated from all attending and explanatory circumstances, the Court was requested to submit to the consideration of the jury with a charge that from these alone, if found to have been proved, a paramount right in the crossing had inured to the public.

Now, even had the proof in the cause presented only the bare facts thus suggested in the plaintiff's prayer, these would not have warranted the instruction requested. For while they do import, as before stated, a grant by the defendant to the public of the privilege of crossing the track, yet they are far from conclusive that the privilege granted was to be exercised paramount to the pre-existing rights of the defendant. The privilege of crossing the track subject to the continued use of it as a railroad by the defendants for all the purposes of their business, would substantially serve the purposes of the avenue, and therefore the acquiescence of the defendants, and even their adapting the crossing to the grade of their track would naturally import no more. But the Court in charging as to the effect of the defendants' acts upon the relative rights of the parties in the crossing, submitted to the jury, as was proper to be done, the acts referred to in the prayer for instructions in connection with other circumstances in proof which were explanatory of the real import of those acts, and presented thus, the whole state of facts proved and proper to be considered in determining the nature and extent of the privilege granted to the public stood as follows · When Washington Avenue was laid out, the *locus in quo* was devoted specially and exclusively to the business of a railroad. For this it had been acquired and was then being used, and for this its continued use as before was indispensable. The business involved large interests to the corporators and to the public : for prosecuting it to the best advantage, the preservation of all the rights and

facilities of the company was both their interest and
their public duty.   On the other hand these defendants
had no interest in the objects for which the avenue was
opened.   Their whole connection with it was accidental.
It so happened that the avenue intersected their track
and for using it a crossing became necessary.   The
defendants opposed no resistance.   Their original atti-
tude to the public was simple acquiescence; nor was this
attitude or any rights resulting from it at all varied by
their adapting the crossing to the new grade of the
road in 1863; for the effect of this was only to keep the
matter in *statu quo.*

On the other hand stands the conclusive fact that from
the opening of the avenue until the happening of the
injury complained of, the defendants continued to occupy
and use their track in all respects as before, for so it
must be presumed in the absence of proof to the con-
trary.   The sideling on which the cars stood being at
the place of intersection when the Avenue was opened,
remained there.   This sideling was entire until the
change was made in the course of the track eastward of
the crossing, when the defendants, for their own purposes
so far as appears, removed part of it, but a portion of it
extending some distance within the lines of the avenue
remained, and we must presume, continued in use.
Indeed the facts of this case so indicate.   From all these
circumstances it would be a violent presumption to con-
clude that the defendants intended, or could have been
understood as intending, more than to afford to the pub-
lic the accommodation of a crossing over the track with-
out prejudice in any respect to their own use of it.   The
circumstances were not sufficient to be submitted to the
jury as a ground from which they might infer that the
defendants had surrendered their paramount rights in the
crossing.   Still less should the jury have been instructed
as was requested, that such surrender was a legal conclu-
sion from these facts; and as all the material circum-
stances were uncontroverted, we think that the Court was

correct in not submitting it as an open question for the jury, and in charging them that under such circumstances the rights of the defendants remained paramount.

Considerations of public policy seem hardly admissible upon such a question as this; but were it so they would not be served by construing the acts of companies under such circumstances more stringently against them. It is very certain that if by permitting a road opened by private persons to cross their track their own use of the track is prejudiced, or even rendered doubtful or subject to construction, railroad companies will, as they unquestionably may do, enclose their roads at once, in all such cases.

Before leaving this exception it should be noticed that the instructions given to the Jury as to the relative rights of the parties in the crossing were based upon a state of facts which the charge of the Court treated as established in proof and not controverted. We must consider that the court were correct in so dealing with the proof; because in the bill of exceptions no evidence is set forth by which alone it could appear whether or not the facts stated by the Court were controverted, nor is any exception taken to the charge in this respect—on the contrary, the bill, by the mode in which it is framed in effect (and doubtless it was so intended,) adopts the statement of the proof by the charge in lieu of the usual statement of the course of evidence on the points excepted to. We, therefore, in our consideration of the case, have assumed the proof to be as it is set forth in the charge,—no less and no more.

In accordance with the views which have been expressed, the fourth exception is overruled.

The third exception is the only remaining one to be considered.

It embraces the concluding portion of the charge, in which the Court summing up the points before ruled, submits the case to the jury thus. "If, therefore you shall be satisfied from the evidence that the cars were standing on the sideling mentioned and within the boundaries of the

41

N. C. & F. T. Railroad, although they may have been within the line of what is called Washington Avenue, your verdict should be for the defendants, for the reason that the company had a right to place and leave them there, whether they are to be considered the owners of the soil or the owners of the railroad and the right of way as the case may be." It will be observed that the Court here submits the case to the jury as if the defendants' liability for the injury depended solely upon the question before discussed, whether the continued use of the track and sideling by the defendants for the purposes of their business, was or was not subject to the right of the public to cross the track ; and having ruled that under the circumstances the right of the defendants was not so subject but was paramount, there remained no other question of fact to be found by the jury, but whether the cars which caused the injury were or were not standing within the lines of the railroad. The ground of error in this mode of submitting the case insisted upon by the plaintiff's counsel was, that the defendants' exemption from liability in this action did not depend solely upon the question of their having a paramount right to place cars on the sideling ;—that even although as ruled by the Court the defendant had such a paramount right, yet that if the cars were placed there under such circumstances as to render the crossing dangerous, and at a time when it was not needful for the business of the company, the defendants were liable, and that the Court should have so instructed the jury, submitting to them the question whether the defendants had been guilty of negligence as to the time or mode of placing or keeping their cars on the sideling.

Unquestionably there might be circumstances under which these defendants would be liable for injuries sustained by persons in crossing their track to and from the avenue. In affirming their paramount right for all the purposes of their business to use the track and sideling, we do not deny their responsibility for exercising their right in a manner dangerous to the public and at the

same time not required for the proper purposes of their road. *Sic utere tuo ut non alienum lœdas.* But sitting as a court of error upon the record before us, we cannot reverse the judgment below for the omission to submit to the jury the question of negligence in this case, and this for three reasons, each of which alone is conclusive.

First, the issue for trial raised by the pleadings excluded the question of negligence.

The narr grounds the defendants' liability for the injury upon a total denial of their right to place or keep their cars upon the *locus in quo,* a denial of their right to do so at any time or for any purpose. It alleges that Washington Avenue is a " public road," or as is laid in the second count a " public street " ; that on this public road or public street, (treating the place of intersection as being to all intents and purposes a part of the avenue) the defendants wrongfully and unjustly, " i. e. wholly without right, " put and placed " their cars and " wrongfully and injuriously kept and continued them there," " in consequence of which said negligence and improper conduct," (the narr proceeds) the injury complained of resulted. Here though the injury is ascribed in terms to " negligence and improper conduct," this phrase by direct reference applies only to the defendants having placed their cars on a public road or street, where they had no right to place them ; it is not an allegation of negligence as to the time, mode or purpose of placing them there in the exercise of an admitted general right on the part of the defendants. To the narr so framed the defendants pleaded the general issue, and thus was raised as the issue for trial, the question whether the *locus in quo* was a public road or street, and whether the defendants had, or had not, the right as against the plaintiff to place or keep their cars upon it.

This right was, upon the pleadings, the whole question at issue, and the Court was correct in so submitting the case to the jury.

Another objection to reversing the judgment for the omission of the Court to charge upon the question of neg-

ligence is, that it does not appear from this record that that there was any evidence tending to prove such negligence. The bill of exceptions does not set forth any evidence in the cause, but adopts (in effect, tho' not expressly) the statement of the case made in the charge of the Court, and from this statement it does not appear at what time the cars were standing on the sideling, whether by day or at night, or how long they stood there, or for what purpose they were placed or kept there, nor do any, of the circumstances connected with the injury complained of appear, but all that this record discloses as to the occasion of the injury is that it was caused by cars of the company standing on their sideling. Taking this to have been the whole proof on this point below, as upon a writ of error we are bound to do, (for a court of error knows nothing but what the record discloses) there does not appear to us to have been sufficient evidence tending to establish a case of negligence to warrant a reversal of the judgment on the ground that the question of negligence was not submitted to the jury.

But another objection equally decisive is, that the Court below were not requested to submit to the jury any question of negligence ; but on the contrary, in strict accordance with the averments of the narr, the plaintiff's counsel in his prayer for instructions, which is part of the record, rested his case upon a simple denial of the right of the defendants to place or keep their cars on the sideling, claiming that this right they had lost, as against persons passing over the avenue, by certain acts amounting to a dedication of the crossing as a part of the avenue or at least amounting to waiver of, or an estoppel against, the exercise of such right.

It is a settled rule that a judgment shall not be reversed for an omission to give to the jury an instruction which was not requested at the trial. 3 *S. & R.* 373, 380, 7 *S. & R.* 99, 6 *Wend.* 268, 274., 2 *Peters* 15.

It is the opinion of the Court that the judgment below be affirmed.    *Wooten, J.* concurred.