GARRISON *vs.* AKIN and others.

In what cases the *confessions* of a party may be received, for the purpose of establishing the commission of a fraud by him; and what weight they are entitled to, as evidence.

IN EQUITY.   The bill in this cause was filed to set aside a bond of indemnity executed by the plaintiff to the defendants, the execution of which it was alleged was procured by the defendants, fraudulently.   On the 30th of November, 1841, Hassill Garrison, a brother of the plaintiff, entered into a contract with the defendants for the purchase of a farm of 135 acres in Pittstown, at $25 per acre.   The farm was encumbered by two mortgages, nearly equal in amount to the purchase money which Hassill Garrison was to pay.   He agreed to assume the payment of the mortgages, and to pay or secure the balance on the 10th of April following ; when a deed was to be executed by the defendants.   On the 16th of April, 1842, the defendants conveyed the farm to Hassill Garrison, and at the same time Hassill Garrison and the plaintiff executed a bond to the defendants in the penalty of $5000, conditioned to indemnify them against their bond executed to one Dayton, upon which there was due about $3200, and which was secured by a mortgage upon the farm, it being one of the mortgages the payment of which Hassill Garrison had agreed to assume.   The bill alleges that the plaintiff, at the time he executed the bond, believed

Garrison v. Akin.

that he was merely becoming security for his brother to pay the balance of the purchase money which would be due to the defendants, after deducting the amount of the mortgages assumed by Hassill Garrison; and that the defendant, Christopher Akin, fraudulently misread the penalty of the bond, stating it to be $500 instead of $5000.

*T. C. Ripley & D. Wright*, for the plaintiff.

*J. Pierson*, for the defendants.

Harris, J. ~ I am not satisfied, from the proofs in this cause, that any fraud or imposition was practised upon the plaintiff, in the manner in which the execution of the bond was procured. The plaintiff alleges that he supposed he was signing a bond in the penalty of only $500, and that the condition of the bond was to pay the balance of the purchase money which would be due the defendants. He himself admits, and the witnesses who were present expressly state, that the whole bond was read over to him by the defendant Christopher Akin; and yet in the condition of the bond there is no reference or allusion to the payment of any balance to the defendants. On the contrary, it is set forth in the condition of the bond, with unusual explicitness, that the obligors are to indemnify and save harmless the defendants against their bond to Dayton, upon which there was then due about $3200. There is no pretence that the condition of the bond was not correctly read to him. He could not, therefore, have been ignorant of the fact, that, whether the penalty of the bond was $500, or $5000, he was executing an obligation by which he undertook to protect the defendants against their personal liability for the incumbrance on the farm. The testimony of the witnesses who were present when the bond was executed—even of Hassill Garrison himself—is such as strongly to impress upon the mind the conviction that no unfairness was practised upon that occasion. I do not propose to enter into an examination of the testimony, either in support of the plaintiff's allegation, or that on the part

Garrison *v.* Akin.

of the defence. It is enough to say that it is difficult to conceive how the facts proved by the defendants to have occurred at the time of the execution of the bond, can be reconciled with the allegations upon which the plaintiff founds his claim to relief.

The subsequent conduct of the plaintiff, too, seems inconsistent with the pretence now set up, that he believed he had only made himself liable to the extent of $500, by executing the bond. In May, 1843, the interest on the incumbrances not having been paid up, the holder of the mortgages commenced proceedings to foreclose. The plaintiff called on the witness Fish, who resided in the neighborhood of the farm, to consult with him on the subject, and told him he should lose about $1000 in consequence of having executed the bond. This statement seems irreconcilable with the allegation that he supposed he was only liable for $500. He then proceeded to pay off the first mortgage upon the farm, which amounted to $600 or $800, and took a conveyance of the farm from Hassill Garrison to himself. It was not until after all this, that we hear of any complaint on the part of the plaintiff that there was any thing wrong about the execution of the bond. And when he seems first to have conceived the idea that he might not be liable upon the bond, he makes the actual penalty of the bond the very ground of his defence against his liability.

The evidence upon which the plaintiff relies to establish the fraud, consists entirely of the confessions alleged to have been made by one of the defendants. It cannot be necessary to enter into an examination of this part of the testimony. Several witnesses swear to the admissions of Christopher Aikin, one of the defendants, that when the bond was executed he read it over to the plaintiff, and that he intentionally read the penalty $500 instead of $5000.

There have been but few judges or elementary writers, who have not had occasion to speak of the character of this kind of evidence ; such is the facility with which it may be fabricated, and such the difficulty of disproving it, if false. It is so easy, too, by the slightest mistake or failure of recollection, totally to per-

vert the meaning of the party and change the effect of his declarations, that all experience in the administration of justice has proved it to be the most dangerous kind of evidence, always to be received with great caution, unless sustained by corroborating circumstances. Then, indeed, the character of this species of evidence is changed, and the mind receives it without suspicion.

These remarks are, I think, justly applicable to the present case. Instead of sustaining the testimony of the witnesses in relation to the confessions of which they speak, all the attending circumstances seem to encourage the suspicion that, if the witnesses intended honestly to relate their recollections of what was said by the defendant, they must have misapprehended what he intended to say, or have fallen into some mistake or misrecollection. The conduct of the plaintiff himself seems to forbid the idea that he had been the dupe which, according to the testimony of these witnesses, he is represented by Christopher Akin to have been.

In view of all the facts and circumstances which appear in this case, I think the plaintiff has failed to sustain the material allegations of his bill by satisfactory proof. The bill must, therefore, be dismissed, with costs.

GREENE SPECIAL TERM, October, 1847.     *Harris*, Justice.