THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HARRY BURTON and Another, Appellants.

*Arson — acts and declarations of defendant — motive and credibility of testimony a question for the jury — charge of court — need not be repeated — when a verdict will not be set aside as against evidence.*

Upon the trial of a person for the crime of arson, it is proper for the trial court to receive evidence of the movements and acts of the defendant during the night, a short period prior to the breaking out of the fire in question, and the declarations of such person are admissible in evidence, not for the purpose of establishing an independent crime, but with a view to establishing the condition of mind in which the defendant was.

Evidence to establish a fact by the confessions of a party should always be scrutinized and received with caution. and it must be assumed that a jury. upon rendering a verdict on a criminal trial. has performed its duty in scrutinizing, weighing and comparing the admissions shown to have been made by the defendant, with all the facts and circumstances appearing in the case.

Upon the trial of a person for the crime of arson. it is proper for the court to leave the question as one of fact for the jury to determine, whether a motive for the crime was or was not disclosed by the evidence.

The degree of credence to which the testimony of a person on trial for the alleged commission of a crime is entitled should be determined by the jury and not by the court.

A court cannot be required to repeat a portion of its charge or answer again to different portions thereof as analyzed by counsel.

Upon a criminal trial, a charge to the jury that the defendants are presumed to be innocent until the contrary is proved and that, in case of a reasonable doubt as to the guilt of either of them, that one is entitled to an acquittal, sufficiently suggests the benefit of a reasonable doubt therein.

Upon an appeal from a judgment convicting a person of a crime, the court will not interfere with the verdict of a jury unless it is clearly against the weight of evidence, or appears to have been influenced by passion, prejudice, mistake or corruption, and the fact that there is in the judgment of the court a rational doubt of the guilt of the defendant is not a sufficient ground for a reversal.

APPEAL by the defendants, Harry Burton and another, from a judgment of the Court of Sessions held in and for the county of Otsego on the 8th day of December, 1892, convicting the defendants of the crime of arson.

In the Otsego Oyer and Terminer of October, 1892, the defendants were indicted, charged with having, on the 14th day of June, 1892, at the town of Oneonta, committed the crime of arson in the second degree, by having in the night-time "willfully, maliciously and feloniously set on fire, with intent to burn the same, a building not inhabited, to wit, a blacksmith shop, there situate on Main street in the village of Oneonta, N. Y., belonging to and owned by Ann Elizabeth Amsden, and adjoining and within the curtilage of an inhabited building known as the Lacey Block, in which there was at the time thereof divers human beings, endangering the said Lacey Block and the lives of the occupants thereof," and thus having violated section 487 of the Penal Code.

After the verdict was received in the Court of Sessions, where the trial took place in December, 1892, a sentence was pronounced that the defendants be imprisoned for the term of six years and six months, and upon the conviction and sentence judgment was entered and a bill of exceptions was prepared and settled and ordered filed in the office of the clerk of the county of Otsego and annexed to the judgment roll. The defendants appeal to this court "from judgment of conviction rendered against them  *  *  *  on the 8th day of December, 1892."

*Gibbs & Wilbur*, for the appellants.

*Frank L. Smith, District Attorney*, for the respondent.

**500**    PEOPLE *v.* BURTON.

FOURTH DEPARTMENT, APRIL TERM, 1894.    [VOL. 77.

HARDIN, P. J.:

From the evidence it appears that the blacksmith shop mentioned in the indictment is a wooden building, which was discovered to be on fire at the rear end thereof, and was situated within about three feet of the Lacey Block, which is also a wooden building, and the roof of the blacksmith shop is built into or against the Lacey Block. The description of the location of the buildings, and their situation with respect to each other, sufficiently indicates that the fire in the blacksmith shop endangered the Lacey Block. The fire was discovered about four o'clock in the morning of June fourteenth on the outside of the blacksmith shop, at the rear end thereof, and the circumstances attending the discovery of the fire sufficiently indicate that it was caused by an incendiary act, and warranted the jury in finding that the fire was incendiary. The evidence also indicated that the defendants had spent the larger portion of the night in and about the village drinking and carousing, and that they had passed these premises several times during the night in company with each other, and that about two o'clock preceding the fire one of the defendants endeavored to obtain beer from one Hecox, who conducted the business of bottling beer in the basement of the Lacey Block, next to the blacksmith shop, and that on being refused he became angry. The defendants were in company with one Osterhout and others a portion of the night preceding the discovery of the fire, and had been drinking very extensively in the yard of the boarding house where one of the defendants boarded, about one o'clock at night, when they were driven out of the yard by the keeper of the boarding house. Subsequently, in company with Osterhout, they went up the street, passing in the vicinity of the blacksmith shop, and when they reached the Windsor Hotel one of the defendants got possession of six bottles of lager beer, after drinking some at the hotel, and, after obtaining the bottles of beer, they went back down Main street, passing the blacksmith shop and halting near the residence of Barnes, where they continued their drinking. In speaking of the movements of the defendants Osterhout testifies : " We went down Main street by this blacksmith shop and down to and in front of the residence of A. M. Barnes, the undertaker, and there is a low stone wall next to the sidewalk. We drank the lager up, laid the bottles on the bank. I said I would fetch the bottles back, and they

proposed to set the building afire. I can't tell which one spoke first; they both talked about it. They did not say what building. They didn't say with reference to any wooden building. They said they wanted to set fire where it would make the biggest fire. They said I had better go along. I told them I wouldn't, and got up and picked up the bottles and went back to the Windsor. They got up and started in the opposite direction. as I started up the street. I started up the street and went to the Windsor Hotel. and they started towards the railroad track." It appears by this witness that upon reaching the Windsor Hotel a conversation was had. and the witness continues: "I heard one of them say, I can't tell which one it was, said: 'There will be a hell of a time around there in a few minutes.' I can't say whether it was Clapper or Burton that said that: they were both present when one of them said it. They went right out; didn't stay there over five minutes, I don't think. They went out together. I couldn't say how long after they went out before I heard an alarm of fire. Oh, it might have been twenty minutes or half an hour. It might not have been as long as that. The alarm I heard was, Bissell went up stairs to call the help, came down stairs and he says, ' By God, there is a fire out there.' Fred Bissell, the clerk said so. I went out doors then and I saw the fire in back there. I couldn't tell just exactly where it was then. It was down on Main street; the hose cart came down along there, but I could see the fire on the rear of the blacksmith shop from the Windsor when I came out." We think the evidence produced upon the trial was such that the court was required to submit the question of the guilt or innocence of the defendants to the jury, and that there is sufficient evidence in the case to warrant the finding made by the jury.

(2) We think no error was committed by the trial court in receiving evidence of the movements and acts of the defendants during the night, at a short period prior to the breaking out of the fire. The declarations of the defendants were not received for the purpose of establishing an independent crime, but rather with a view of establishing the condition of mind they were in; as said in *People v. Everhardt* (104 N. Y. 595): "Such proof is not received for the purpose of showing other crimes than that charged in the indictment, but for the purpose of showing the guilty knowledge and intent which are elements of the crime charged."

(3) We are of the opinion that the court committed no error in refusing to advise an acquittal of the defendants at the close of the evidence offered by the People. The learned counsel for the appellants endeavors to escape the force of some of the evidence given by the People upon the suggestion that some of the admissions made are to be taken with caution; and calls our attention to *Law* v. *Merrills* (6 Wend. 277). In that case it was said that "Evidence to establish a fact by the confessions of the party should always be scrutinized and received with caution." We assent to the doctrine; and we must assume that the jury performed its duty in scrutinizing, weighing and comparing the admissions shown to have been made with all the facts and circumstances appearing in the case. Our attention is also invited to *Garrison* v. *Akin* (2 Barb. 27), where Judge HARRIS, in speaking of admissions, says: "It is so easy, too, by the slightest mistake or failure of recollection, totally to pervert the meaning of the party and change the effect of his declarations, that all experience in the administration of justice has proved it to be the most dangerous kind of evidence, always to be received with great caution, unless sustained by corroborating circumstances. Then, indeed, the character of this species of evidence is changed, and the mind receives it without suspicion." We think it was, within the spirit of that authority, the duty of the trial judge to submit the force and effect to be given to the declarations or admissions of the defendants to the jury, and that no error was committed in that regard.

(4) Defendants called one Jones as a witness, who was a baker by trade, and the bakery in which he was at work on the night of the fire was in a small store in the basement on the opposite side of the street from the blacksmith shop and a little further east, and he testifies that about ten o'clock of the night in question the defendant Clapper entered his shop and that Burton was on the sidewalk, and that he saw him after that in the bake shop at half-past twelve and received from him a couple of bottles of beer, and that he next saw him about half-past three or twenty minutes to four coming across the railroad track on Main street, coming toward the bakery and from the direction of Mrs. Martin's where he was boarding, and that Burton was with him. The witness continued: "They were wrestling and punching each other as boys would that

had a little in them. Burton couldn't get along very well. I couldn't say whether they got down in the dirt. They were tumbling around there quite a little this side of the crossing. When crossing there they were on the sidewalk and in the highway both. That was at half-past three and I was in the bake shop door. I next saw them, after seeing them at the crossing, come up by the old blacksmith shop on the other side of Main street, I don't know who owns it, by Mrs. Fox's millinery store which is on the same side of the street as the bakery. I was in the door of my bake shop. They came right along up past Grove street and down to me, and past the blacksmith shop in question. They stopped there and Mr. Clapper came down to me and got a few cakes — cookies — I had baked that lay on the table. He wanted to get money of me. I should say he was there about twenty minutes. He ate some cookies and was monkeying with the bread and wanted to get money of me. * * * When they left my bakery it was about five minutes to four, which was the last I saw of them till I went home to breakfast. I heard the alarm of fire. I was the first that heard it, about five, eight or ten minutes, or something like that, after defendants left me." This witness was very extensively cross-examined as to all the circumstances mentioned by him in his testimony in chief and as to the surrounding obstacles and buildings, and as to the maneuvers and whereabouts of the defendants, and when the district attorney was summing up the defendants' counsel asked the court to direct the district attorney " that there is no evidence in this case that there are buildings to obstruct the vision of the witness Jones from the bake shop to the crossing." The request was refused and an exception was taken, and the court thereupon remarked : " I will leave it to the jury to say whether there are any buildings or not." In the course of the opinion delivered in *People* v. *Rohl* (138 N. Y. 620) it was said : " The district attorney had a right to allude to any circumstance disclosed by the evidence which, in his view, rendered the story of the defendant improbable." (See, also, *Fry* v. *Bennett*, 2 Bosw. 684.) We think the trial court committed no error in refusing to place the restrictions upon the district attorney requested by the defendants. After the trial judge had delivered a careful charge, covering all the essential elements of the case he was

requested to charge " that the jury may and should take into consideration that no motive has been shown on the part of the defendants to commit the offense charged." The court refused to request " upon the ground that it is the province of the jury to say whether there is a motive or not from the evidence," to which the defendants excepted. In *Shepherd* v. *The People* (19 N. Y. 544) Judge DENIO, in speaking of the ground upon which evidence of motive inducing the commission of a crime in cases resting upon circumstantial evidence is received, says : " It does not of itself prove anything, but it tends to remove the improbability of his having done an act which he must have known to be wrong." In *People* v. *Bennett* (49 N. Y. 138) CHURCH, Ch. J., in speaking for the court, says : " Motive is an inducement, or that which leads or tempts the mind to indulge the criminal act. It is resorted to as a means of arriving at an ultimate fact, not for the purpose of explaining the reason of a criminal act which has been clearly proved, but for the important aid it may render in completing the proof of the commission of the act when it might otherwise remain in doubt. With motives, in any speculative sense, neither the law nor the tribunal which administers it has any concern."

In *People* v. *Trezza* (125 N. Y. 740) it was held : " Whether the acts of the accused proceeded from some motive, or from general depravity of mind and a reckless disregard of human life, in either case, in the absence of lawful excuse or justification, if the other elements of the crime charged are proved, a conviction is proper."

In *People* v. *Minisci* (12 N. Y. St. Repr. 719) SMITH, P. J., said, in speaking of motive : " It is enough that the evidence does not absolutely exclude the existence of motive." We think no error was committed by the trial judge in leaving the question, as one of fact, for the jury to determine, whether there was a motive for the crime disclosed by the evidence.

Defendants also requested the court to charge " that the defendants are presumed innocent until they are proven guilty, and that the burden of proof rests upon the People to satisfy them beyond a reasonable doubt." This request was refused by the court " upon the ground that he had so charged already," to which refusal the defendants excepted. In the body of the charge it was said : " The defendants are presumed to be innocent until the contrary be proved,

and in case of a reasonable doubt as to the guilt of either of them, that one is entitled to an acquittal." We think the trial judge properly refused to repeat that portion of his charge in response to the request made. The benefit of a reasonable doubt was suggested in the course of the charge, and no rule of law was violated in that regard. (*Raymond* v. *Richmond*, 88 N. Y. 671.) We think the trial court observed the rule laid down in *O'Connell* v. *The People* (87 N. Y. 377), and, as was said in that case, "the court could not be required to repeat it (a portion of his charge) or answer again to different portions as analyzed by counsel."

(5) Appellants criticise the testimony of Osterhout and refer to their own, and urge upon this court to hold that the jury have found contrary to the testimony given by themselves. We think it was for the jury to determine what credence should be given to Osterhout, and what faith and credit should be given to the defendants as witnesses in their own behalf.

In *Newman* v. *People* (63 Barb. 631) it was said: "The degree of credit to which he (the defendant) was entitled was to be decided by the jury and not the court." In speaking of the force and effect that should be given to the verdict of a jury, it was said in *People* v. *Taylor* (138 N. Y. 398) that the court will not interfere with it "unless it is clearly against the weight of evidence, or appears to have been influenced by passion, prejudice, mistake or corruption. If, in the judgment of this court, there was a rational doubt of the guilt of the defendant it would not be a sufficient ground for reversal."

Applying the rule thus laid down to the evidence presented in this case, we are of the opinion that the verdict should remain. See section 542 of the Code of Criminal Procedure.

MARTIN and MERWIN, JJ., concurred.

Conviction and judgment of the Court of Sessions of Otsego county affirmed, and after the judgment is entered in the judgment book a certified copy of the entry shall be forthwith remitted to the clerk of Otsego county, "with whom the original judgment roll is filed," in accordance with section 547 of the Code of Criminal Procedure.